**STATE of Missouri, Respondent,**

v.

**Richard L. McMELLEN, Appellant.**

No. WD 46353.

Missouri Court of Appeals,
Western District.

Jan. 25, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1994.

Application to Transfer Denied
April 26, 1994.

**Dr. John W. CAIN, Appellant,**

v.

**MISSOURI STATE BOARD OF
PODIATRY MEDICINE,
Respondent.**

No. WD 47935.

Missouri Court of Appeals,
Western District.

Jan. 25, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1994.

Application to Transfer Denied
April 26, 1994.

Dr. John W. Cain, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barry Gilbert, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

## ORDER

Robert E. Steele, Jr., Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Ziegler, Traci J. Sanders, Asst. Attys. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Richard L. McMellen appeals a jury conviction of stealing by deceit in violation of § 570.030.1, RSMo 1986. The trial court sentenced McMellen to five years imprisonment and fined him $2000. McMellen appeals; he claims that the trial court erred in denying his motions for acquittal at the close of the state's evidence and at the close of all the evidence. McMellen asserts that the evidence was insufficient to establish that he had the requisite intent to commit theft by deceit. We affirm.

Viewing the evidence in the light most favorable to the verdict, the evidence establishes that in the fall of 1985 a hail storm damaged the roof of Billy Jack Hilton's house in Liberty. On October 25, 1985, McMellen, a roofer, approached Hilton about repairing his roof and gave him a bid on the job. On October 28, 1985, McMellen and Hilton entered into a contract for McMellen to fix Hilton's roof. The parties agreed that Hilton would give McMellen a $2000 down payment to cover the cost of materials to be delivered to his house, and the remainder of the contract price would be paid upon McMellen's completing the job. Hilton gave McMellen a check for $2000, and McMellen cashed it. No materials, however, were ever delivered to Hilton's house, and McMellen never performed any work.

Hilton talked to McMellen several times about McMellen's getting the job done. Each time, McMellen promised to do the job very soon, but he never did. In December 1985, McMellen moved to Slater without informing Hilton. Knowing that McMellen was from Slater, Hilton went there on a hunch to look for him. Hilton tracked McMellen down at a relative's house in Slater. Although McMellen once again promised Hilton that he would fix his roof, he did not show up to do the work.

Frustrated with waiting, Hilton filed a complaint on January 18, 1986, with the Liberty police. Later in January, after Hilton had filed the complaint, McMellen called Hilton from California and offered to return the $2000 and to repair the roof in the spring. Hilton rejected McMellen's offer. McMellen never repaired the roof, and he did not return the $2000.

At the close of the state's evidence and at the close of all the evidence, McMellen filed a motion for judgment of acquittal. The trial court overruled both motions. The jury found McMellen guilty of stealing by deceit, and the trial court sentenced him to five years in prison and fined him $2000. McMellen appeals.

McMellen asserts that the trial court erred in denying his motions for acquittal because the state did not present sufficient evidence from which the jury could have found beyond a reasonable doubt that he had the requisite intent to commit theft by deceit. He contends that no evidence existed that he had the intent to steal by deceit at the time he contracted with Hilton. We disagree.

When reviewing the sufficiency of evidence, we consider all the evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). We neither weigh the evidence nor determine its reliability or

the witnesses's credibility. *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). Our review is limited to determining whether the jury had sufficient evidence from which to find the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The "testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case." *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). A jury may believe all, some or none of a witness' testimony, and the jury must resolve any contradictions or conflicts in that testimony. *Dulany*, 781 S.W.2d at 55.

■ Section 570.030 says, "A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." Deceit is defined as:

> [P]urposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind.... Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

Section 570.010(6), RSMo 1986. Because the subjective intent of the defendant at the time of the commission of the crime is rarely open to direct proof, intent may be proven by circumstantial evidence. *State v. Inscore*, 592 S.W.2d 809, 811 (Mo. banc 1980); *State v. Lue*, 813 S.W.2d 922, 925 (Mo.App.1991). The circumstantial evidence must include more than the fact that the work was not performed as promised. Section 570.010(6); *State v. Neal*, 680 S.W.2d 310, 312 (Mo.App. 1984).[1]

■ The jury's conclusion that McMellen intended to deceive Hilton at the time Hilton gave him the $2000 was supported by sufficient evidence. McMellen took Hilton's $2000 and never performed any work, bought any supplies, contacted Hilton about the job—until Hilton had complained to the police—or returned the money to Hilton. This evidence supports the conclusion that McMellen used the money for his own personal use and never intended to purchase materials for Hilton's roof.[2] McMellen claimed that he stored the materials at an associate's house: "Brent's house on Hwy. 291." McMellen, however, could not tell the jury the associate's last name. He also indicated that after the charges were filed against him he just let Brent use the materials. Hilton repeatedly contacted McMellen about fixing the roof, but McMellen always had an excuse for not doing the job. McMellen testified that it would take him two to four days to complete the job. Although bad weather occurred during this time span, many days of good weather occurred for McMellen to do the job between November to January. Further, Hilton said McMellen left town without informing him.[3] McMellen's leaving town without telling Hilton supports the conclusion that McMellen never intended to work on Hilton's roof.

McMellen relies upon *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978), for support of his contention that no evidence existed establishing his intent to deceive. In *Basham*, the defendant contracted with another individual to paint his barn. The individual gave the defendant a check for $400 to buy supplies, and the defendant cashed the check and used only $50 to buy materials. The court found that the evidence did not indicate that the defendant intended to deceive at the time he promised to paint the barn or when he re-

---

1. We agree with the dissenting opinion that McMellen's failure to perform his contract alone "does not tend to show any intent, existing at the time he entered into the contract," but we base our opinion on the totality of the circumstances—not just McMellen's failure to perform.

2. McMellen claimed that he used the money to pay a material bill which included materials for Hilton's roof. The invoices he presented at trial, however, predated the contract with Hilton. The jury was not required to believe McMellen's testi-

mony that the invoices predated the contract because he had ordered the supplies based on his conversations with Hilton in early October from which he became confident that he was going to get the job.

3. McMellen asserted that he left a note on Hilton's door telling him that he was moving to Slater and where he could find him, but, again, the jury was not required to believe this testimony.

ceived the check because the defendant had purchased paint and brought paint to the job site. *Id.* at 520–21. The court also noted that the evidence did not support the conclusion that the defendant disappeared, but only that the victim was unable to reach the defendant by telephone. *Basham* does not aid McMellen because in this case McMellen did not even attempt to minimally perform on his promise. Not only did McMellen use all of the money to pay other obligations and did not buy any materials for Hilton, he left town without informing Hilton at a time when Hilton was repeatedly asking him when the work would be done.

We conclude that the trial court did not err in overruling McMellen's motions for acquittal because the circumstantial evidence adduced at trial was sufficient to establish McMellen's intent to deceive. The judgment is affirmed.

ULRICH, J., concurs.

KENNEDY, P.J., dissents in separate opinion.

KENNEDY, Presiding Judge, dissenting.

I am unable to agree with my colleagues that the State's evidence shows prima facie any intent on Mr. McMellen's part to defraud Mr. Hilton at the time he received the $2,000 from Mr. Hilton. The fact he failed to perform his contract with Mr. Hilton does not tend to show any intent, existing at the time he entered into the contract, not to perform it. The evidence is equally consistent with Mr. McMellen's good faith at the time of the contract, and a later-formed intent not to perform it, or with a simple neglect, or inability, to perform it. The statute itself says: "Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." Section 570.010(6), RSMo 1986. I would reverse the conviction on the basis of *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978).

The attorney-general cites three cases in which convictions have been affirmed against the defendant's contention that the evidence was not sufficient to show defendant's fraudulent intent, existing at the time he made the promise which he then did not perform. Those cases are: *State v. Hollingsworth*, 817 S.W.2d 479 (Mo.App.1991), *State v. Bagley*, 771 S.W.2d 93 (Mo.App.1989) and *State v. Inscore*, 592 S.W.2d 809 (Mo. banc 1980). Each case has evidence of defendant's concurrent fraudulent intent which is absent from this case. In fact, in each case the defendant's alleged fraud was shown to be in a pattern or scheme of ongoing fraudulent conduct. There is no such evidence in this case. The cases cited by the attorney-general are contrasts to our case, not analogies.