**STATE of Missouri, Respondent,**

v.

**Peter C. SIELFLEISCH, Jr., Defendant–Appellant.**

**Peter C. SIELFLEISCH, Jr., Defendant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 62004, 54430.**

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 4, 1994.

Philip M. Horwitz, Haller, Leonard & Lenze, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Peter C. Sielfleisch, Jr., defendant-appellant, appeals from: (1) his conviction of stealing $150.00 or more by deceit, § 570.030 R.S.Mo.1986 (all further references shall be to R.S.Mo.1986 unless otherwise indicated); and (2) the denial of his motion to vacate judgment and sentence, pursuant to Rule 29.15. On appeal, defendant contends that the trial court erred in (1) denying his motion for acquittal because defendant did not violate § 570.030; (2) denying his motion for acquittal because there was insufficient evidence that defendant had the intent to deceive and the victim relied upon defendant's false representation that financing was arranged; (3) overruling defense counsel's objection to the introduction of evidence regarding civil judgments against defendant when it was not relevant; and (4) entering judgment despite manifest injustice, which occurred when the prosecutor impermissibly argued during his closing statement that the jury should not consider the full range of punishment, and that defendant would commit crimes in the future. On his appeal from the denial of his Rule 29.15 motion, defendant argues that the motion court was clearly erroneous in finding no prejudice when defense counsel failed to call John Olivarri, Jr., to testify that defendant had financing arranged prior to March 1, 1988, and therefore no deceit occurred. Judgment affirmed.

On January 29, 1989, defendant was charged by indictment with stealing $150.00 or more by deceit, class C felony, § 570.030.

The evidence adduced at trial is viewed in the light most favorable to the verdict. In 1986, James Roberts (Roberts) owned J.R. Too's, a bar located in the Florissant Meadows Shopping Center. Bianco Properties (Bianco) owned the shopping center and leased the space to Roberts. Roberts purchased from Aries Lighting and Audio Company (Aries) approximately $70,000.00 worth of sound and light equipment, which subsequently was installed in the bar, and owed Aries approximately $7,000.00 at the time of the sale involved here. In addition to the sound and lighting equipment, Roberts also purchased and installed chairs, various fixtures and appliances, cash registers, soda fountains, televisions, tiling, carpeting, freezers and coolers.

In the fall of 1987, Roberts decided to sell his bar and listed J.R. Too's with Art Kelly, a real estate and commercial business broker. On March 1, 1988, Roberts sold J.R. Too's to defendant for $75,000.00. At that time, defendant gave Roberts a personal check in the amount of $40,000.00. The closing occurred at the office of defendant's attorney, who prepared the documents.

Per the sale agreement between Roberts and defendant, Roberts agreed to accept defendant's personal check for $40.000.00 as partial payment for the bar equipment, and defendant agreed to make monthly payments on the balance. As part of the sale agreement between Roberts and defendant, Roberts agreed to sublease the property to defendant until defendant could obtain a lease from Bianco.

Prior to the March 1, 1988 closing date, defendant paid Fred Barrera, the owner of Aries, $1,000.00 towards the unpaid balance. Defendant advised Roberts that he had made arrangements for the $40,000.00 check to clear, and that the "financing was all set." On March 1, 1988, after defendant gave Roberts the $40,000.00 check, Roberts gave defendant the keys to the bar and defendant took possession of the premises and began operation of J.R. Too's. On March 3 and 7, 1988, the written sale agreement was signed by defendant and Roberts, respectively.

At the closing, defendant asked Roberts to hold the $40,000.00 check until the following day. Roberts deposited defendant's check on that day and was notified two weeks later that the defendant had insufficient funds to satisfy the check. The bank ran the check through a second time and informed Roberts that defendant had insufficient funds to satisfy the check.

Roberts contacted defendant in regard to the check and defendant informed Roberts that he had sought alternative financing. Defendant continually assured Roberts that "financing was coming." Eventually, Roberts was unable to contact defendant. J.R. Too's remained open approximately two to three months after Roberts sold it to defendant. Defendant never made any subsequent payments to Roberts.

Bianco eventually locked the doors of the bar, pursuant to a court order for non-payment of rent. The Sheriff's Department contacted Roberts and advised him that the bar equipment would be removed and placed on the street. Roberts could not contact defendant so he had to remove the bar equipment, part of which was missing, and he placed the equipment in storage for approximately one year. Defendant never could be contacted and Roberts eventually sold the equipment and settled with Bianco. Further, Roberts had to pay liquor bills that defendant had incurred on Roberts' liquor license.

Defendant testified in his own defense at trial that his $40,000.00 check bounced because he was unable to obtain financing due to the lien on the bar equipment. Defendant further testified that he did not discuss the lien on the bar equipment with Roberts prior to the closing date, that he was unaware that the lien existed until after he signed the sale agreement and took possession of the bar, and that it was not his responsibility to pay the lien. Defendant testified that he had the right to exclusive possession of the bar on the closing date, that he abandoned the bar in mid-April, and that he never owned the bar equipment due to the lien.

During cross-examination, defendant denied that he had subsequently entered into a written security agreement with Willard Lappe in May of 1988, wherein Lappe loaned defendant $25,000.00 and defendant signed a promissory note pledging all of the bar equipment of J.R. Too's, representing that he had full and legal title to the property. Defendant further denied that he had ever pled guilty to a crime, whereupon the state introduced evidence that defendant pled guilty to making a false declaration. Additionally, defendant denied that a series of civil judg-

ments were entered against him for fraud, unpaid bills and liens regarding his operation of various businesses, all of which were previously entered against him.

The state called Lappe as a rebuttal witness. Lappe testified that in May of 1988, defendant approached him to make an investment in J.R. Too's. Lappe entered into a security agreement with defendant whereby Lappe loaned defendant $25,000.00 and defendant signed a collateral promissory note pledging all of the bar equipment in J.R. Too's as collateral. In the security agreement, defendant represented that he had full and legal title to the bar equipment, including the lighting and sound equipment, free of all liens. Lappe eventually obtained a $143,000.00 judgment against defendant for fraud and failure to pay the note.

On March 5, 1992 the jury found defendant guilty of stealing $150.00 or more by deceit, and defendant was sentenced to one year imprisonment and a $1,000.00 fine.

Subsequently, defendant filed a Rule 29.15 motion and an evidentiary hearing was held on that motion. On June 24, 1993, the motion court issued its Findings of Fact and Conclusions of law, denying defendant's Rule 29.15 motion. On July 23, 1993, defendant filed a Rule 75.01 motion to re-open the denial of his Rule 29.15 motion. This motion asked the motion court to consider an allegation that was not contained in his Rule 29.15 motion. The Rule 75.01 motion subsequently was denied by the motion court. Defendant filed his notice of appeal, as to his 29.15 motion, on July 30, 1993.

In his first and second points, defendant contends that the trial court erred in denying his motion for acquittal at the close of all of the evidence because there was insufficient evidence to support his conviction for stealing by deceit, asserting that: (1) defendant did not violate § 570.030; (2) defendant did not have the intent to deceive; and (3) Roberts did not rely upon defendant's false representation that financing was arranged.

In reviewing a challenge to the sufficiency of the evidence, we are limited to a determination of whether there is sufficient evidence from which a reasonable juror

might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55[3] (Mo. banc 1989). We must accept as true all evidence, whether direct or circumstantial, that tends to prove the defendant's guilt and must accept all inferences which support the verdict. *State v. Dagley,* 793 S.W.2d 420, 423[1] (Mo.App. 1990). While doing so, we must reject all evidence and inferences contrary to the verdict. *Id.* A jury may believe all, some, or none of the witness' testimony, and the jury must resolve any contradictions or conflicts in that testimony. *Dulany, supra.*

Defendant was convicted of stealing over $150.00 by deceit, pursuant to § 570.030, which reads in pertinent part:

1. A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

■ The essential elements of stealing by deceit under the statute are: (1) there must be an appropriation (2) of property or services of another (3) with the purpose to deprive the other thereof (4) accomplished either without the other's consent or by means of deceit or coercion. *State v. Lue,* 813 S.W.2d 922, 925[5] (Mo.App.1991). Deceit is defined in § 570.010(6) as "purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind."

Defendant was charged in the indictment as follows:

[Defendant] appropriated a saloon and discotheque equipment and supplies of at least One Hundred and Fifty Dollars ($150.00), which said property was possessed by James Roberts, and [defendant] appropriated such property from Mr. Roberts with the purpose to deprive him thereof by deceit, to-wit: by purposely and falsely representing to James Roberts that [defendant] would pay Roberts approximately $75,000 for the above mentioned property and that financing was all arranged when in fact, defendant did not have the financing arranged, and James Roberts relied on defendant's false representations and parted with the equipment and supplies. Defendant's down payment check for $40,000 was returned by Defendant's bank for insufficient funds and was part of the inducement for James Roberts to part with the property.

■ First, defendant argues that the trial court erred in denying his motion for acquittal at the close of all of the evidence. Defendant contends that "Roberts parted with the bar equipment with a full understanding that defendant did not have sufficient funds to satisfy the check" and that defendant "merely made a future promise to obtain financing which Roberts knew was contingent upon no liens existing on the bar equipment." There is sufficient evidence in the record to indicate otherwise. Prior to closing, defendant paid $1,000.00 to the lien holder as partial satisfaction of the lien. Upon closing, defendant tendered the $40,000.00 check and stated to Roberts that "financing was all set." Subsequently, Roberts handed the keys to the bar to defendant and therefore transferred possession.

Defendant further asserts that a false promise to perform in the future will not support a conviction for stealing by deceit, citing *State v. Severaid,* 583 S.W.2d 238 (Mo. App.1979). Defendant argues that the comments following § 570.010 state that it is impermissible to draw an adverse inference because of one's failure to perform a future promise. If this were allowed, persons borrowing money and thereafter suffering financial reverses and failing to meet their obligations to repay might possibly be convicted without more; the fact of non-performance being used to infer an intention not to perform at the time the loan was obtained. *See* V.A.M.S. § 570.010, comment (7) (1979).

The statement, "financing was all set," is not a future promise, as defendant purports. The statement was false and related to "a matter of fact" pursuant to § 570.010(6). Defendant's first point is denied.

■ Defendant next contends that there was insufficient evidence adduced at trial that the defendant, on March 1, 1988, had the requisite intent to deceive when he gave Roberts the check as partial payment for the

bar equipment. Defendant asserts that this case amounted to nothing more than defendant's non-performance of payment for the bar equipment.

■ To sustain a conviction under § 570.-030, the State must establish that the defendant had the intent to cheat or defraud at the time the false representations were made to cause the victim to part with his property. *State v. Morris,* 699 S.W.2d 33, 36–37[3] (Mo. App.1985). Otherwise, there is no element of deceit or fraud, and the defendant would be guilty of no more than breach of contract, not subject to criminal sanction. *Id.*

■ Because the subjective intent of the defendant at the time of the commission of the crime is rarely open to direct proof, the intent of the defendant may be proven by means of circumstantial evidence. *State v. Inscore,* 592 S.W.2d 809, 811[4] (Mo.1980). The circumstantial evidence must include more than the fact that the agreement was not performed as promised. *State v. McMellen,* 872 S.W.2d 508, 510[1] (Mo.App.W.D. 1994). The state may introduce evidence of similar incidents whereby the defendant consistently makes the same or similar promises. *Inscore,* 592 S.W.2d at 811[5].

Defendant's defense at trial was that he had financing arranged when he gave Roberts the check, but the check bounced because there was a lien on the equipment of which he was unaware, and therefore he was unable to obtain financing. The only evidence presented by defendant that he had the financing arranged was his own testimony. Roberts and two other witnesses testified that defendant not only was aware that the lien existed prior to the closing date, but he also affirmatively agreed and made arrangements to pay the lien prior to the closing date.

Further indicative of defendant's intent to deceive was his subsequent conduct after the closing date in that after the check bounced, Roberts called defendant and defendant advised Roberts that he had sought alternative financing. Defendant continually assured Roberts that "financing was coming" and that he would make the check "good" to Roberts. Defendant continued to operate the bar and possess the bar equipment, and he never made the $40,000.00 check "good" to Roberts, nor did defendant make any subsequent payments to Roberts for the balance due. Thus the jury reasonably could have found that defendant deceived Roberts.

Additionally, defendant testified that he eventually abandoned the bar in mid-April, 1988, and that he never owned the bar equipment, due to the lien. In cross-examination, defendant denied that he had entered into a written security agreement with Willard Lappe in May or June of 1988, wherein Lappe loaned defendant $25,000.00 and defendant signed a collateral promissory note pledging all of the bar equipment in J.R. Too's and represented that he had full and legal title to the property, free of all liens.

Lappe testified in rebuttal that in May, 1988, defendant asked him to make an investment in J.R. Too's. Pursuant to a written security agreement, Lappe loaned defendant $25,000.00 and defendant signed a collateral promissory note pledging the bar equipment free of all liens. Lappe eventually obtained a $143,000.00 judgment against defendant for fraud and failure to pay the note. Defendant had denied that this judgment was entered against him.

Further, Lappe testified that he entered into another agreement with defendant whereby Lappe extended credit to defendant for defendant to purchase and operate the Flashback bar. A number of suits were filed against defendant by utility, food, and liquor vendors. Lappe eventually obtained judgment for over $268,000.00 against defendant for unpaid bills and converted funds and assets of the business. During cross-examination, though, defendant denied that this judgment was entered against him. Therefore, we find that there is sufficient evidence to support the conclusion that the defendant had the requisite intent to deceive.

■ Defendant next contends that the evidence was insufficient to establish that Roberts "relied on defendant's false representation that financing was arranged."

On direct examination, Roberts stated:

Q. Mr. Roberts, why didn't you just go back in and take control of the bar before the doors closed?

A. If I could have seen the future I would have. But you know, I'm used to dealing with business people, and I was being told by Mr. Sielfleisch that this arrangement fell through and that there was another concrete arrangement. And I could understand why you could have problems, you know.

And if he had ever called and once told me, you know, that it was off, you know, "I cannot get financing," I would have went back in the next day. Because I could not stand—I already took a big loss. And to go ahead and stood the loss that I did in the end results, I would never have allowed [sic] had I known.

\* \* \* \* \* \*

Q. Okay, let me backtrack here a little bit to March 1, 1988, the date the building changed hands. Had Mr. Sielfleisch made any representations to you about the financing for the purchase of the bar?

A. No. The only thing he said to me was—at the closing date was that financing was all set.

Further, when Roberts received notice that the check did not clear, he sought assurance from defendant that the check would be forthcoming. He continued to receive reassurances and therefore did not retake possession of the bar. Roberts, again on direct examination, added:

Q. So when you kept talking to him then Mr. Sielfleisch assured you, "Oh, the financing is coming, the financing is coming."

A. Yes, uh-huh. That the check's—not to be concerned with the checks, that it would be good.

There was sufficient evidence whereby the jury reasonably could have found that Roberts relied upon defendant's false representation. Defendant's second point fails.

■ In his third point on appeal, defendant contends that the trial court erred in overruling counsel's objection to the introduction of evidence regarding civil judgments against defendant when they were not relevant to the case and his reputation or character were not in issue during direct examination.

■ Although defendant objected at trial, he failed to raise this issue in his motion for new trial, so we are limited to reviewing it for plain error. Rule 30.20; *State v. Williams*, 812 S.W.2d 518, 519[1] (Mo.App. 1991). The plain error complained of must impact so substantially upon the defendant's rights that manifest injustice or a miscarriage of justice will result if left uncorrected. Rule 30.20; *State v. Hoopingarner*, 845 S.W.2d 89, 94[14] (Mo.App.E.D.1993).

The state argues that it was not plain error for the trial court to allow the prosecution to cross-examine defendant regarding his credit history in the operation of his businesses because such evidence (1) was relevant in that it tended to disprove defendant's defense at trial that financing had been arranged, and (2) was properly used for impeachment purposes.

■ The extent of cross-examination of an accused rests within the discretion of the trial court and we will not interfere unless that discretion is clearly abused. *See State v. Evans*, 802 S.W.2d 507, 512[6] (Mo. banc 1991).

Defendant specifically testified in direct testimony that he had arranged financing to purchase the bar from Roberts. When the prosecutor attempted to question defendant on cross-examination regarding the past judgments against him, defendant's counsel objected. At the ensuing side-bar, the prosecutor responded that the civil judgments were relevant in order to show defendant's "complete lack of financial responsibility and very dim likelihood that he had received financing." Taking the respective arguments of counsel into consideration, the trial court overruled the objection.

The cross-examination of which defendant complains was relevant in that it tended to disprove defendant's defense at trial, namely, that financing in fact had been arranged.

Further, this evidence properly was used for impeachment purposes. During cross-

examination, the prosecutor questioned defendant about his credit history regarding the operation of his business. Defendant testified that he had not had any credit problems with his companies:

Q Now in addition to the bill paying problems you had with the All American Saloon account, what about with your lumber company?

[Defense Counsel]: Your Honor, I'm going to object to that.

A. Yeah.

[The Court]: Overruled.

Q Did you have problems with bill paying on that, too?

A Not out of the normal course of business.

Q Well, what's the normal course of business, to have problems with bill paying?

A Well, sure. If people don't pay me or late paying, if someone owes me money and they don't pay, instead of 30 days they pay me in 90 days, okay, my bills also might be late paying, just like on a personal level.

The prosecutor subsequently elicited testimony from the defendant that he had two civil judgments entered against him individually for unpaid bills and judgment liens in the operation of his lumber business. This evidence properly was used for impeachment purposes to show that defendant's financial problems were not within the confines of the "normal course of business." Defendant's third point is without merit.

In his fourth point, defendant argues that "manifest injustice occurred when the prosecutor impermissibly argued during his closing statement that the jury should not consider the full range of punishment, and that defendant would commit crimes in the future."

We first note that counsel did not object to the complained-of statements at trial. We therefore review for plain error. Defendant bears the burden of proving that the alleged error is of such a magnitude that it constitutes plain error. *Hoopingarner*, 845 S.W.2d at 94[14].

The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summation. *State v. Schwer*, 757 S.W.2d 258, 263[9] (Mo.App.1988). Relief should be granted on an assertion of plain error to matters involving closing argument only under extraordinary circumstances. *State v. Kempker*, 824 S.W.2d 909, 911[4] (Mo. banc 1992). This is because, absent an objection by defense counsel, it is apparent that defense counsel "considered the remarks inconsequential not warranting objection or as trial strategy they set the stage for built in error." *State v. Wood*, 719 S.W.2d 756, 760[5] (Mo. banc 1976).

Defendant first contends that the prosecutor impermissibly instructed the jury to sentence defendant to jail time and not consider the option of solely imposing a fine as a sentence:

When you get back there and you talk about it and you find him guilty you're going to have to decide what to do. Now, if you say guilty and a fine, what's that going to accomplish? If you say guilty you got to give him penitentiary time or county jail time, because he is not going to pay a fine. But I'll tell you, just on the off chance he wins the lottery or something, tack on a fine too.

A prosecutor has wide latitude in argument and may argue for severe punishment as a deterrent to the commission of similar crimes. *State v. Hubbard*, 659 S.W.2d 551, 558[25, 27] (Mo.App.1983). It is permissible to argue that a defendant is deserving of heavy punishment so long as defense counsel has an opportunity to reply, and argue to the contrary. *State v. Keely*, 791 S.W.2d 864, 867[6] (Mo.App.1990).

The complained-of argument was a legitimate appeal to the jury to impose the maximum sentence allowed under the statute as a deterrent to crime.

Defendant next contends that the prosecutor stated in closing argument that defendant would "commit the same crime again." Specifically, the statement of which defendant complains is as follows:

He made a deal. It was even more than a handshake. It was in writing. I don't care whether the contract says there's no liens, everybody testified that everybody knew about them except him. And what's he got to lose? A criminal conviction. If he wants to open another bar and he's convicted he can't get a liquor license. He's got a lot to lose here. But he'll do the same dern [sic] thing.

 As defendant argues, it is true that a prosecutor's speculation about a defendant's propensity to commit crimes in the future is error. *State v. Taylor*, 831 S.W.2d 266, 270[11] (Mo.App.E.D.1992). This rule is designed to preclude argument that "goes beyond bounds so as to excite and inflame passions or prejudice." *Id.; quoting State v. Long*, 768 S.W.2d 664, 666[2] (Mo.App.1989). However, statements made in closing argument rarely constitute plain error requiring reversal. *Taylor*, 831 S.W.2d at 271[12]. Reversal is necessary only where the proscribed remark had a decisive effect on the verdict. *Id.*

It is doubtful that the instant statement, when viewed in context of the entire argument, would have induced the kind of "passion and prejudice" that the rule seeks to prevent. Defendant has not demonstrated any prejudice. His fourth point is without merit.

 In his final point, defendant contends that the motion court was clearly erroneous in finding no prejudice where trial counsel failed to call witness John Olivarri, Jr., to testify that the defendant had financing arranged prior to March 1, 1988, and therefore no deceit had occurred.

The state contends that this point is not cognizable on appeal, because defendant did not raise this issue in his Rule 29.15 motion.

 Rule 29.15(d) requires that all grounds for setting aside the post-conviction motion be contained in the motion. *State v. Twenter*, 818 S.W.2d 628, 641[22] (Mo. banc 1991). Rule 29.15(d) thus bars all claims not raised in a timely-filed pleading. *Id.*

 No appeal is possible from the trial court's refusal to exercise its discretion to set aside or amend a judgment under Rule 75.01. *Ensco Distributing Corp. v. Oppenheimer Precision Products, Inc.*, 723 S.W.2d 616, 617[2] (Mo.App.1987).

Defendant first raised this issue in a Rule 75.01 motion. The allegation contained in his Rule 75.01 motion was not contained in his Rule 29.15 motion. Therefore, this issue is not properly preserved for review.

Judgment affirmed.

PUDLOWSKI and AHRENS, JJ., concur.