STATE of Missouri, Respondent,

v.

Jeffrey Wayne THOMPSON, Appellant.

No. WD 71009.

Missouri Court of Appeals, Western District.

June 29, 2010.

Craig A. Johnston, for Appellant.

Daniel N. McPherson, for Respondent.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Judge.

Jeffrey Thompson appeals the trial court's judgment upon a jury verdict finding him guilty of stealing by deceit. On appeal, Mr. Thompson claims that there was insufficient evidence to support his conviction and that the trial court erred in overruling his motion to dismiss the case on the basis that Buchanan County was not the proper venue. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

The State charged Jeffrey Thompson with the class C felony of stealing by deceit in violation of section 570.030.[1] A jury found Mr. Thompson guilty of the charge,

1. All statutory references are to RSMo Cum. Supp.2005 unless otherwise noted.

and the trial court sentenced him, as a prior and persistent offender, to ten years of imprisonment.

In early 2006, Kenneth and Sarah Siemens were building a home in Buchanan County in St. Joseph, Missouri. When Mrs. Siemens decided that she wanted granite countertops in the kitchen, the Siemenses' general contractor, Craig Whitacre, recommended Mr. Thompson to do the job. Mrs. Siemens called Mr. Thompson, and he directed her to a business in Kansas City called Stone and Beyond where she could choose the granite she wanted for the countertops.[2] Mrs. Siemens went to Stone and Beyond in February 2006 and selected the type of granite she wanted. She then met Mr. Thompson at a work site close to the store where they discussed options for the edging of the countertops.

After the Siemenses had chosen the granite, Mr. Siemens asked Mr. Thompson to submit a written bid for the job. Mr. Thompson faxed a bid to Mr. Whitacre's office, which was located in Buchanan County. The bid quoted a price of $4,198 for the granite and the fabrication. Mr. Whitacre faxed the bid to Mr. Siemens's office, which was also located in Buchanan County. The Siemenses decided to accept the bid, and Mrs. Siemens called Mr. Thompson to discuss a payment arrangement. Mr. Thompson said that he wanted a down payment of $2,800 to cover the cost of the granite and part of the labor. He told Mrs. Siemens to make the check out to his company, Southeast Holding Company, and to mail the check to a post office box in Florida.[3]

Mr. Siemens wrote the check and mailed it to Florida, but it was later returned as undeliverable. The Siemenses talked to Mr. Thompson, and they agreed to meet him at Stone and Beyond to give him the check. Mr. Siemens met Mr. Thompson at Stone and Beyond and gave him the same check that he had previously mailed to Florida. The check was later deposited in the bank account of Southeast Holding Company. While he was at Stone and Beyond, Mr. Siemens asked for and received a copy of the sales order showing that the granite had been paid for. Mr. Thompson signed the document, and it was stamped as "paid" at the request of Mr. Siemens so he could have a receipt showing that the granite had been paid for. However, the granite was not actually purchased that day.

When it was time for the countertops to be installed, Mr. Whitacre began contacting Mr. Thompson. On three or four occasions, Mr. Thompson said he would come on a weekend and do the work, but he never did. At the time, Mr. Whitacre and the Siemenses thought that Mr. Thompson was living in the Kansas City area, although he was doing some work in Florida. They were not aware that Mr. Thompson had moved to Florida. During this time period, Mr. Whitacre made dozens of phone calls to Mr. Thompson. Mr. Thompson never initiated contact or called Mr. Whitacre back. Eventually, Mr. Thompson stopped answering Mr. Whitacre's phone calls, and the phone number that Mr. Thompson had given Mr. Whitacre went out of service. When the Siemenses moved into their home, the countertops had not been installed. Because Mr. Thompson never purchased the granite from Stone and Beyond or installed the

---

**2.** Stone and Beyond is a wholesaler of granite from which fabricators can purchase granite and then cut, polish, and install it for their customers, such as the Siemenses.

**3.** Mrs. Siemens testified at trial that Mr. Thompson said he was doing some work in Florida but that she was under the impression that he lived in Kansas City.

countertops, the Siemenses had to buy additional granite and hire someone else to fabricate the granite and install the countertops.

Mr. Siemens contacted the Buchanan County Sheriff's Department and asked it to investigate the matter. After investigators talked to Mr. Thompson, he called Mr. Siemens and offered to repay the $2,800. In October 2006, Mr. Thompson borrowed money from a relative for the purpose of repaying the Siemenses but never repaid the money the Siemenses had given him. After an investigation, Mr. Thompson was charged with the class C felony of stealing by deceit. Prior to trial, the court heard evidence on Mr. Thompson's motion to dismiss for reason of improper venue. Mr. Thompson argued that none of the elements of the crime occurred in Buchanan County and that, therefore, Buchanan County was not the proper venue for the trial. The court denied the motion, finding that the State established by a preponderance of the evidence that the elements of representation and reliance occurred, at least in part, in Buchanan County.

The trial proceeded in Buchanan County, and the jury found Mr. Thompson guilty of stealing by deceit. The trial court sentenced him, as a prior and persistent offender, to ten years of imprisonment. This appeal by Mr. Thompson followed.

### Sufficiency of the Evidence

In his first point on appeal, Mr. Thompson contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence. He claims that the evidence was insufficient to establish beyond a reasonable doubt that he committed the crime of stealing by deceit because the State presented no other evidence beyond his failure to perform the work on the Siemenses' home.

■■■ When a defendant challenges the sufficiency of the evidence to support a conviction, our review is limited to " 'a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Karl,* 270 S.W.3d 514, 515 (Mo.App. W.D.2008) (quoting *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998)). We accept as true all evidence favorable to the State, including all favorable inferences drawn therefrom, and disregard all evidence and inferences to the contrary. *Id.* "A jury may believe all, some or none of a witness'[s] testimony, and the jury must resolve any contradictions or conflicts in that testimony." *State v. McMellen,* 872 S.W.2d 508, 510 (Mo.App. W.D.1994).

■■■ Mr. Thompson was charged with stealing by deceit in violation of section 570.030, which provides that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Section 570.010(7) defines "deceit" as "purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind." However, "[d]eception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." § 570.010(7). The State must establish that the defendant had the intent to cheat or defraud at the time the false representation was made to cause the victim to part with his or her property. *State v. Morris,* 699 S.W.2d 33, 36–37 (Mo.App. W.D.1985). Because the subjective intent of a defendant can rarely be established by direct evidence, intent may be proven by

circumstantial evidence. *McMellen*, 872 S.W.2d at 510. As noted in the statutory definition of "deceit," such circumstantial evidence must include more than the fact that the promise was not performed. *Id.*

Mr. Thompson argues that the only evidence the State offered in order to prove that he committed the offense of stealing by deceit was that he did not perform the granite work as promised. Mr. Thompson contends that, because the State only presented evidence of non-performance, the jury could not find, based on that fact alone, that he had the intent to steal by means of deceit.[4] The State argues that it presented additional evidence beyond mere non-performance and points to a nearly identical case in which this court held that there was sufficient evidence of intent to steal by deceit. *See McMellen*, 872 S.W.2d 508.

In *McMellen*, the defendant was convicted of stealing by deceit after he gave a bid on a roofing job, took $2,000 as a down payment to cover the cost of materials, and then failed to purchase materials or perform the work. *Id.* at 509. Additional evidence showed that the victim spoke to the defendant several times about completing the work, and the defendant promised to do the job soon but never did. *Id.* The defendant then moved away from the area without informing the victim. *Id.* After the victim filed a complaint with the police, the defendant called him and offered to return the $2,000 or repair the roof. *Id.* The victim rejected the defendant's offer, and the defendant did not refund the money or repair the roof. *Id.*

■ On appeal, this court found that there was sufficient evidence to support the jury's conclusion that the defendant intended to deceive the victim. *Id.* at 510. The evidence showed that the defendant took $2,000, and never performed the work, bought supplies, contacted the victim about the job until the victim contacted the police, or returned the money to the victim. *Id.* The court also noted that the defendant claimed that he had stored materials for the job at an associate's house, but he could not tell the jury the associate's name. *Id.* Additionally, when the victim contacted the defendant about fixing the roof, he always had an excuse for not doing the job. *Id.* Lastly, the court noted that the fact that the defendant left town without informing the victim supported the conclusion that the defendant never intended to work on the victim's roof. *Id.*

As this court found in *McMellen*, there was sufficient evidence to support Mr. Thompson's conviction for stealing by deceit. The evidence in this case, as viewed under the applicable standard of review, is indistinguishable from the set of facts presented in *McMellen*. Like the defendant in *McMellen*, Mr. Thompson made a bid for the job and took money from the Siemenses to buy material but did not buy the material or perform the job. Although Mr. Thompson received the check and signed a document showing that the granite had been paid for, he did not purchase the granite that day. On several occasions when Mr. Whitacre contacted Mr. Thompson, he said that he would do the job but

---

4. Mr. Thompson also notes that evidence of his non-performance was consistent with the defense he presented at trial. At trial, he claimed that he was unable to perform the job because he had a falling out with his business partner in Florida. Because the money given by the Siemenses was deposited in his partner's account, to which he claimed to not have access, he could not retrieve the funds and purchase the granite. However, the jury was not required to believe the testimony Mr. Thompson presented in his defense. Furthermore, under our standard of review, we disregard all evidence and inferences contrary to the jury's verdict.

never arrived to do the work. Mr. Thompson never initiated contact with Mr. Whitacre or the Siemenses and would not return Mr. Whitacre's phone calls. Eventually, the phone number Mr. Whitacre had been calling to reach Mr. Thompson went out of service. During this time period, Mr. Whitacre and the Siemenses were not aware that Mr. Thompson had permanently moved Florida. The officer who investigated the matter testified that Mr. Thompson said he had a business partner in Florida but that he could not remember his last name or his contact information. After the police contacted him, Mr. Thompson called Mr. Siemens and offered to refund the money, but Mr. Thompson never paid the $2,800 back to the Siemenses. Finally, a relative of Mr. Thompson testified that Mr. Thompson borrowed money from him in order to repay the Siemenses. However, Mr. Thompson did not use this money to repay the Siemenses.

We find that the aforementioned evidence is sufficient to support Mr. Thompson's conviction for stealing by deceit. Contrary to Mr. Thompson's argument, the State provided evidence of facts beyond mere non-performance. Rather, the totality of the circumstances surrounding the transaction with the Siemenses and his non-performance provides sufficient evidence from which the jury could have inferred that Mr. Thompson intended to appropriate the Siemenses' money with the purpose to deprive them thereof by means of deceit at the time he offered to perform the granite work. *See McMellen,* 872 S.W.2d at 510 n. 1 (stating that the court's finding that the evidence was sufficient to support the conviction was based "on the totality of the circumstances—not just [the defendant]'s failure to perform"). Mr. Thompson's first point is denied.

**Venue**

■ In his second point on appeal, Mr. Thompson contends that the trial court erred in denying his motion to dismiss for improper venue. He claims that Buchanan County was not the proper venue for the trial because none of the elements of the alleged crime of stealing by deceit were committed in Buchanan County.

■ Section 541.033 provides that, where elements of a crime occur in more than one county, a defendant shall be prosecuted in any of the counties where any element of the alleged offense occurred. § 541.033.1(2). Therefore, we review an issue of venue on the basis of whether the trial court "could reasonably infer from the facts and circumstances that any element of the crime with which the defendant is charged occurred within the trial court's jurisdiction." *See State v. Holmes,* 978 S.W.2d 440, 442 (Mo.App. E.D.1998). If the defendant challenges the correctness of venue prior to trial, the prosecution must prove by a preponderance of the evidence that an element of the crime occurred in the county where the case is filed. *See State v. Taylor,* 238 S.W.3d 145, 150 (Mo. banc 2007).

The essential elements of stealing by deceit are: (1) an appropriation; (2) of property or services of another; (3) with the purpose to deprive the individual thereof; (4) accomplished without the individual's consent or by means of deceit or coercion. *State v. Sielfleisch,* 884 S.W.2d 422, 427 (Mo.App. E.D.1994); § 570.030.1. The element of deceit involves the making of a false representation upon which the victim relies. *Sielfleisch,* 884 S.W.2d at 427; § 570.010(7). Mr. Thompson was charged with stealing by deceit as follows:

[O]n or about April 14, 2006, in the County of Buchanan, State of Missouri, the defendant appropriated U.S. currency of a value of at least five hundred

dollars, which property was owned by Kenneth and Sarah Siemens, and the defendant appropriated such property from Kenneth and Sarah Siemens and with the purpose to deprive them thereof by deceit in that the defendant represented to Kenneth and Sarah Siemens that he would complete home construction to their home, specifically granite work and that he would supply granite product, which representations were false and known by the defendant to be false and Kenneth and Sarah Siemens relied on the representations and [were] thereby induced to part with such property.

Mr. Thompson argues that, because he finalized the deal, had his only meeting with Mr. Siemens, and took possession of the check from Mr. Siemens in Jackson County, none of the elements of stealing by deceit occurred in Buchanan County. He claims that, therefore, no crime could have been committed until he accepted the check from Mr. Siemens in Jackson County. However, "[v]enue is not governed by where the crime is completed; rather, venue is proper in any county where at least one element of the crime occurs." *State v. Dailey*, 53 S.W.3d 580, 585 (Mo.App. W.D. 2001).

The State argues that the element of reliance occurred in Buchanan County because the Siemenses received the bid from Mr. Thompson there, which induced them to write the check for $2,800. The evidence shows that Mrs. Siemens was in Buchanan County when she discussed payment terms with Mr. Thompson over the phone, Mr. Siemens received Mr. Thompson's bid at his office in Buchanan County,[5] the Siemenses decided to accept the bid in Buchanan County, and Mr. Siemens wrote the check for $2,800 and mailed it from Buchanan County. Although the Siemenses ultimately gave the check to Mr. Thompson in Jackson County, they received and accepted the bid in Buchanan County, and they wrote and initially mailed the check from Buchanan County.[6] Therefore, the State proved by a preponderance of the evidence that, while in Buchanan County, the Siemenses received the bid and were thereby induced to part with their property. Because an element of the crime of stealing by deceit occurred in Buchanan County, venue was proper, and the trial court did not err in overruling Mr. Thompson's motion. Mr. Thompson's second point is denied.

The judgment of the trial court is affirmed.

All concur.

---

5. Mr. Thompson claims that, because he faxed the bid to Mr. Whitacre, who then faxed it to Mr. Siemens, Mr. Thompson did not make a representation to Mr. Siemens outside of Jackson County. However, the evidence shows that Mr. Siemens requested the bid and that, based on phone conversations with Mrs. Siemens, Mr. Thompson was aware that the Siemenses, rather than Mr. Whitacre, would be paying him directly based on the bid. Therefore, it would have been reasonable for the jury to infer that Mr. Thompson knew his bid would be forwarded to the Siemenses.

6. As noted previously, the check the Siemenses gave Mr. Thompson in Jackson County was the same check that they had initially mailed to Florida.