**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**David Eugene BAINTER,**
**Defendant–Appellant.**

**No. 40541.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 15, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Jan. 13 and March 9, 1981.

Louis J. Weber, Hillsboro, for defendant–
appellant.

Timothy Patterson, Pros. Atty., Hillsboro,
John Ashcroft, Atty. Gen., Paul Robert
Otto, Lisa M. Camel, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

STEWART, Presiding Judge.

Defendant was found guilty by a jury of two counts of murder in the second degree, and assault with intent to do great bodily harm. He was also found to be a second offender under § 556.280 RSMo 1969 and was sentenced by the court to life imprisonment on each of the two counts of murder to run consecutively and to five years for the crime of assault with intent to do great bodily harm to be consecutive to the latter sentence for murder.

Defendant contends that the court erred in (1) permitting the State to introduce evidence that he mistreated the child of a Mrs. Steever, (2) denying defendant's motion for mistrial based on the endorsement of a witness shortly before trial and in interfering with counsel's attempt to interview the witness, (3) refusing to sign an order requiring a purported witness to appear in court, (4) in admitting evidence of a prior assault upon the victim of the assault charges, (5) permitting the State to inquire about details of prior convictions, (6) giving MAI–CR 3.06, the verdict directing instructions on the two counts of murder second because the form instruction failed to require a finding of premeditation, (7) refusing to instruct on excusable homicide and excusable assault, (8) refusing to instruct on justifiable homicide and justifiable assault, and (9) refusing to direct a verdict in favor of defendant at the close of the State's case because the evidence on behalf of the State clearly showed that the shootings were the result of a struggle and thus were accidental and excusable.

■ We are first required to determine, sua sponte, whether any of these issues are preserved for our review by the timely filing of a motion for new trial. *State v. Rapp*, 412 S.W.2d 120, 122 (Mo.1967).

The time for filing a motion for new trial in this case is governed by Rule 27.20(a) as follows:

"(a) A motion for a new trial shall be in writing and must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor. Such motion shall be filed before judgment and within ten days after the return of the verdict: Provided, on application of defendant, the court may extend the time for filing such motion for an additional period of thirty (30) days: Provided further, the court shall have no power to make another or further extension of the time for filing said motion."

In this case the record reveals that the court took evidence outside the hearing of the jury and found that defendant had been convicted of prior felonies. Thereafter the jury returned a verdict of guilty on all counts of the amended information on December 10, 1977. Sentence and judgment were entered on December 16, 1977. On January 25, 1978 the trial court entered its order as follows:

"Comes now the defendant and by leave of Court files his Motion for New Trial with the consent of the Prosecuting Attorney; the additional time of 30 days having been granted to the defendant heretofore in the Judge's chambers, together with the filing of Exhibits 1 through 8. IT IS SO ORDERED:"

It is unnecessary for us to determine whether an extension of time to file the motion for new trial had been granted because the motion was filed forty–six days after the verdict of the jury had been returned.

The provisions of the rule are mandatory and in all events the motion for new trial must be filed within forty days after the return of the verdict.[1] *State v. Knicker*, 364 S.W.2d 544 (Mo.1963). The motion was not timely filed and it did not preserve any issues that are required to be preserved by the filing of a motion for a new trial.

---

1. The substance of Rule 27.20(a) may now be found in Rule 29.11(b) which became effective on January 1, 1980. The present rule limits the time for filing the motion for new trial to 15 days after return of the verdict. Upon application within that time the court may extend the time for a period not to exceed 10 days.

Defendant, at oral argument, has asked us to consider six of the Points Relied On as plain error under Rule 27.20(c), now Rule 29.12(b) which reads:

"(c) Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved, for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

■ This rule is not to be routinely invoked; it must be limited to circumstances where manifest injustice or miscarriage of justice has resulted. The plain error rule is intended to be the ultimate repository of an appellate court's power to correct injustice. The mere allegation of error does not raise the issue to the status of plain error.

■ Before a court should apply the plain error rule there must be a strong showing that injustice or a miscarriage of justice will otherwise result. When guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from the refusal to invoke the rule. *State v. Hurtt,* 509 S.W.2d 14, 15[3] (Mo.1974).

■ We have carefully read the transcript and the briefs filed in this case. As illustrated by the facts which are set out hereafter guilt was established by overwhelming evidence. See *State v. Hurtt, supra,* at page 15.

Because of the conclusion we reach we shall set out the facts in detail; in doing so we view the evidence in the light most favorable to the State ignoring defendant's evidence except where it aids the State. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976).

'On October 15, 1976 between 6:00 and 6:30 PM Flora Steever took three of her five young children to the trailer–home of her neighbor Mary Spencer so that Flora and the children could watch television while waiting for Flora's parents. Gary Spencer, Mary's husband, and Charles O'Keefe were also in the Spencer home. The defendant came to the door and was admitted by Mary Spencer. Defendant was using offensive language and Flora Steever returned to her trailer–home with her children. Shortly afterward defendant came to Flora Steever's trailer and asked her to go with him. She left the room to attend the baby who was crying. When she returned the five year old child, Michael, started crying and defendant grabbed the child and shook him. Mrs. Steever was unable to get Michael away from defendant and ran to the Spencers for help. Mr. Spencer went to Mrs. Steever's home and ordered defendant to leave. Defendant went to a trailer that he owned and rented to a Mr. Herrin where he obtained a .38 revolver. He then returned to the Spencer trailer and entered, unannounced and uninvited, with the gun in cocked position in his right hand. Defendant went directly toward Mr. Spencer who tried to "ward him off." In the scuffle that followed, defendant discharged the gun. Mr. Spencer died of a gun shot wound to the head and another shot struck Mr. O'Keefe below the eye. During the shooting Mary Spencer became hysterical and ran out of the trailer calling for help. Defendant chased her, caught her, placed the gun to her head and shot and killed her. He then fled in his automobile.

Defendant took the stand on his own behalf. He testified that he went to the Spencer trailer and had a discussion with Gary and tried to explain why he had not given Gary a job. Gary was angry but did not threaten him. When he left Spencer's trailer he moved his car to Flora Steever's driveway because he decided to talk to her. He was admitted into the trailer by one of the children while Flora was in the back of the trailer. The five year old began crying and defendant placed him on his lap to calm him. He did not see Flora leave the trailer. After a few minutes Gary Spencer came into the trailer and told the defendant to get out. Defendant stated that he told Gary to mind his own business. Defendant testified that Gary then told him that he was going to get a gun and blow defendant's head off. Defendant then left Flora's trailer, went to the trailer he owned, got a gun and went to Gary Spencer's trailer. When he entered the trailer he had the gun in his right hand with the barrel faced

down. Defendant walked up to Gary and when he got to within a foot and a half of Gary he said "Gary who are you going to shoot?" With that Gary lunged forward and reached for defendant's right hand. Defendant pushed Gary back with his left arm. "[A]pparently" the gun was cocked and in the struggle the gun discharged and he saw Charlie O'Keefe fall. Defendant testified that he did not recall shooting Gary and he did not recall shooting Mary Spencer. He later discovered that the gun had been fired "several times."

There is sufficient evidence from which a jury could find that defendant, who was in no immediate danger of death or serious bodily harm when he left Flora Steever's trailer, went to his trailer and obtained a gun, entered the Spencer trailer with the intent to use that gun and did intentionally shoot at Gary Spencer and hit Mr. O'Keefe; that he then shot and killed Gary Spencer. He then went outside, chased, caught, shot and killed Mary Spencer.

■ Even viewing the evidence in the light most favorable to defendant there is no evidence that would warrant the giving of an instruction on excusable homicide or on justifiable homicide. Defendant by his own testimony was the aggressor. There was no evidence that he was in any danger of assault after he left the Steever trailer. He went to his own trailer and obtained a gun and then sought out Gary Spencer, went into the Spencer trailer as a trespasser and advanced upon Mr. Spencer with a cocked gun in his hand. Even defendant's testimony does not give rise to an inference that the gun was discharged accidentally. In any event it cannot be said that defendant was not acting wrongfully while engaged in a lawful enterprise and without negligence. *State v. Browning*, 442 S.W.2d 55 (Mo. banc 1969).

■ Nor was there any evidence that the killings and assault were justifiable. For a homicide or assault to be justifiable there must be a real or apparently real necessity to kill or assault the victim. The aggressor who provokes the difficulty cannot invoke the defense unless he has in good faith withdrawn from the combat. *State v.*

*Sherrill*, 496 S.W.2d 321 (Mo.App.1973). See also *State v. Adkins*, 537 S.W.2d 246 (Mo.App.1976). The evidence, including defendant's, is overwhelming that defendant was the aggressor in the assault of Mr. O'Keefe and the killing of Gary Spencer and of Mary Spencer. There was no basis upon which the court was required to give instruction on excusable or justifiable assault or homicide.

In demonstrating that the evidence of defendant's guilt was overwhelming we have also effectively ruled upon the principal issues raised in defendant's briefs. We have searched the transcript and defendant's brief and find no error much less plain error.

The trial court had jurisdiction of the case, the indictment is sufficient to charge defendant with the crimes, the verdict and judgment are in proper form and the sentence is within the limits of the statute. The judgment of the trial court is affirmed.

WEIER and CRIST, JJ., concur.