**STATE of Missouri, Respondent,**

v.

**Patricia M. WYMAN, Appellant.**

**No. WD 53222.**

Missouri Court of Appeals,
Western District.

May 20, 1997.

---

Rebecca L. Kurz, Assistant Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ULRICH, C.J., P.J., and SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Patricia M. Wyman appeals her conviction by a jury in the Circuit Court of Jackson County for passing bad checks, § 570.120.[1] She claims that the trial court (1) erred in denying her motion for judgment of acquittal at the close of all the evidence in that the evidence was insufficient for a reasonable jury to find her guilty beyond a reasonable doubt; (2) plainly erred in failing to *sua sponte* declare a mistrial after the prosecuting attorney argued that the trial court would not have instructed the jury on the offense of passing bad checks if appellant had not committed a crime; and, (3) erred in its written judgment by finding appellant to be a prior and persistent offender under § 558.019 in that the trial court did not find her to be a persistent offender under that section in its oral findings and that section did not apply to her because the State did not prove that she had ever been remanded to the custody of the Department of Corrections.

We affirm in part and reverse and remand in part.

## Facts

On August 12, 1995, appellant, Patricia M. Wyman, telephoned Peter Angotti, her second cousin and sales manager at Albright–Rogers Chevrolet (the dealership) in Kansas City, about a Chevy S–10 Blazer. She told him that she already had financing and needed to get a Blazer quickly. Typically in situations where the buyer wants to take possession of a new vehicle right away, he or she will give the dealer a check for the full amount, and the dealership will hold the check until the financing is finalized.

On August 12, 1995, appellant visited the dealership and test drove a Blazer. Angotti

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

appraised her trade-in, a 1984 Honda Prelude, and quoted her a price. Appellant told Angotti she needed to talk to her sister before making a decision. Appellant called Angotti back and told him she wanted to buy the Blazer and pick it up August 14. When appellant came in, she and Angotti went through some paperwork and called Lord St. Regis Credit Union, the lender appellant told Angotti was financing the Blazer, to check its correct address for the paperwork. Appellant told Angotti that she already had her financing and it was only a matter of going back to the credit union and giving it the titling information. She said that the credit union had advised her to write the dealership a check, and the credit union would deposit the money in her account once it got the titling information, at which point appellant should call Angotti and tell him to deposit the check. Appellant wrote a check for $23,364 on her United Missouri Bank (UMB) account, signed it "Patricia Angotti Baca," her married name at the time, and presented it to Angotti. Appellant took possession of the Blazer, leaving her Prelude as a trade-in.

Appellant failed to contact Angotti to tell him that the financing had been completed, so after several days, he telephoned her. Appellant told Angotti that she had not been able to complete financing yet. Angotti told her to return the car if she could not obtain financing. Angotti did not hear from appellant for the next several weeks and was unable to reach her. When he finally contacted her, in late September, she said she had secured financing through Norwest Bank in Colorado and told Angotti to run the check through, which he did. The check was returned stamped "account closed" on October 4, 1995. Angotti filed a stolen vehicle report two days later. The Blazer, with 9,000 miles on it, was returned to the dealership in December on a roll-back truck.

UMB records indicated that at no time was there $23,364 in the account on which appellant wrote her check. On the date appellant wrote the check, the balance in the account was $137.01. The bank closed the account on August 31, 1995, and informed appellant by letter that she was to no longer write checks on the account.

Appellant was charged by information with passing bad checks, § 570.120, in the Circuit Court of Jackson County on February 6, 1996. On May 13, 1996, an amended information was filed charging appellant as a prior and persistent offender. On May 21, 1996, before the Honorable Jon R. Gray, a jury found appellant guilty. On July 25, 1996, the trial court sentenced appellant to seven years imprisonment as a prior and persistent offender pursuant to § 558.016, § 557.036.4 and § 558.019.

## I.

Appellant first claims that the trial court erred in denying her motion for judgment of acquittal at the close of all the evidence in that there was insufficient evidence for a reasonable jury to find her guilty beyond a reasonable doubt of passing bad checks as charged. We disagree.

The crime of passing bad checks, § 570.120, is committed when a person, with the purpose to defraud, makes, issues or passes a check knowing that it will not be paid by the drawee, or that there is no such drawee. § 570.120.1(1). If the amount of the check is more than $150, as was the case here, the offense is a Class D felony. § 570.120.4. The intent to defraud must be present at the time the check was issued. *Grimes v. Bagwell*, 837 S.W.2d 554, 560 (Mo. App.1992); *Schumer v. Craig Distrib. Co.*, 745 S.W.2d 163, 164 n. 2 (Mo.App.1987). Appellant claims that the fact that she told Angotti she did not have the funds in her account at the time she issued the check and to hold it for a few days indicated that she did not possess the requisite intent to defraud and that she merely failed to fulfill her promise to deposit into her account at a later date sufficient funds to cover the check. Thus, appellant argues that the trial court erred in overruling her motion for judgment of acquittal at the close of all the evidence.

In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Price*, 928 S.W.2d

429, 430 (Mo.App.1996); *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Nesler,* 922 S.W.2d 459, 460 (Mo.App.1996); *Dulany,* 781 S.W.2d at 55. We do not weigh the evidence but merely decide whether the evidence was sufficient under the reasonable juror standard. *State v. Tracy,* 918 S.W.2d 847, 851 (Mo.App.1996); *State v. Weide,* 812 S.W.2d 866, 869 (Mo.App.1991).

The facts of this case are similar to those in *State v. Sielfleisch,* 884 S.W.2d 422 (Mo. App.1994). There, the defendant issued a check to the payee and stated that " 'financing was all set,' " but asked the payee to hold it until the next day. *Id.* at 425. The defendant in *Sielfleisch* claimed he had only made a future promise to pay and had no intent to defraud, as appellant claims here. The Eastern District of this court upheld the defendant's conviction, holding that "[t]he statement 'financing was all set,' is not a future promise, as defendant purports. The statement was false...." *Id.* at 427.

■ Here, appellant told Angotti that she already had financing, which would cover the check. This was a false statement and was sufficient evidence from which a reasonable jury could infer appellant had the requisite intent to defraud the car dealership at the time she wrote the check. Because the evidence was sufficient for the jury to find beyond a reasonable doubt that appellant intended to defraud the car dealership at the time she issued the check to Angotti and knew the check would not be paid by her bank for insufficient funds, the trial court did not err in denying her motion for judgment of acquittal at the close of all the evidence.

Point denied.

## II.

Appellant's second claim is that the trial court plainly erred in failing to *sua sponte* declare a mistrial when the prosecuting attorney argued that the trial court would not have instructed the jury on the offense of passing a bad check if appellant had not committed a crime. Appellant argues that despite the trial court's *sua sponte* instruction for the jury to disregard the comment, the prosecutor's remarks were so egregious to result in manifest injustice, requiring reversal. We disagree.

■ Appellant concedes that her claim is not preserved for review because she did not request a mistrial at the time the prosecutor made the statement or mention it in her motion for new trial. Plain error review is discretionary, and we exercise such discretion only where a claim of plain error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Moriarty,* 914 S.W.2d 416, 421 (Mo.App.1996); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). "Relief should rarely be granted on assertion of plain error as to closing argument because 'in the absence of an objection and a request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *State v. Harper,* 855 S.W.2d 474, 479 (Mo.App.1993), quoting *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Relief should also be limited because, absent an objection, defense counsel apparently "considered the remarks inconsequential not warranting objection or as trial strategy they set the stage for built in error." *State v. Wood,* 719 S.W.2d 756, 760 (Mo. banc 1986). We choose to exercise our discretion and review appellant's claim of plain error.

■ "Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way." *State v. Jones,* 921 S.W.2d 28, 31–32 (Mo.App.1996). "Because the trial court is in a better position to evaluate the prejudicial effect on the jury, its decision not to grant a mistrial is granted enormous discretion." *State v. Danback,* 886 S.W.2d 204, 209 (Mo.App.1994).

Appellant's claim is based on the following remarks made by the prosecutor in closing

argument: "I'm here to—because [appellant] is guilty of a crime. This went on for several minutes, there's no crime. If there was no crime, there would be no instruction about passing a bad [check]." Tr. 299. Appellant claims that these remarks by the prosecutor suggested to the jury that the trial court had already determined appellant's guilt. Immediately prior to the prosecutor's argument, appellant's trial counsel argued in her closing argument that the case was a civil case rather than a criminal case. In light of these remarks, a reasonable interpretation of the prosecutor's remarks is that she was trying to rebut appellant's trial counsel's argument that this was a civil case and explain to the jury that the case was, in fact, a criminal case, and that passing bad checks was, in fact, a crime. However, the prosecutor's remarks are equally susceptible to the interpretation urged by the appellant, which would impermissibly infer to the jury that the court believed appellant had committed the crime charged.

 Regardless of one's interpretation of the prosecutor's remarks, a trial court ordinarily cures any error by instructing the jury to disregard it. *State v. McCaw*, 753 S.W.2d 57, 59 (Mo.App.1988). Further, a jury is presumed to follow the trial court's instructions. *State v. Bradley*, 811 S.W.2d 379, 382 (Mo. banc 1991). Here, even assuming, *arguendo*, that the prosecutor's remarks in closing argument were impermissible, the trial court's *sua sponte* statement to the jury in response to these remarks of "[t]hat's not true," and its immediate instruction for the jury to disregard them were sufficient to avoid the need to declare a mistrial.

We find that the trial court did not plainly err in failing to *sua sponte* declare a mistrial because of the State's remarks in closing argument.

Point denied.

## III.

Appellant's final claim is that the trial court erred in its written judgment by finding appellant to be a prior and persistent offender under § 558.019 in that the trial court did not find her to be a persistent offender under that section in its oral findings and that section does not apply to her because the State did not prove that she had ever been remanded to the custody of the department of corrections. Thus, appellant requests that judgment be remanded for entry of an order *nunc pro tunc.*

Because the State concedes in its brief that appellant's request is valid, we reverse and remand for the entry of an order *nunc pro tunc* eliminating any reference to appellant being a prior and persistent offender under § 558.019.

## Conclusion

The judgment of conviction and sentence for passing bad checks, § 570.120, is affirmed. The judgment finding appellant to be a prior and persistent offender under § 558.019 is reversed and the cause remanded with the trial court to enter its order *nunc pro tunc* deleting any reference to appellant being a prior and persistent offender under § 558.019.

All concur.