STATE of Missouri, Respondent,

v.

Kenneth G. BOYD, Appellant.

No. WD 53369.

Missouri Court of Appeals, Western District.

Oct. 14, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

Before EDWIN H. SMITH, P.J., ULRICH, C.J., and ELLIS, J.

EDWIN H. SMITH, Presiding Judge.

Kenneth Boyd appeals the judgment of his jury conviction and sentence of twenty years imprisonment as a prior and persistent offender, § 558.016[1], and prior drug offender, §§ 195.275 and 195.291, for the class A felony of possession of a controlled substance, methamphetamine, with intent to distribute, deliver or sell, § 195.211. He raises two points on appeal. In both points he contends his right to due process was violated in that he was denied a fair trial by an impartial jury. In his first point, he claims the trial court plainly erred in failing to declare, *sua sponte*, a mistrial when the prosecutor elicited testimony on direct examination from a co-defendant, James Evans, concerning the disposition of Evans' related charges, and when he commented on this testimony in his closing argument. In his second point, he claims the trial court plainly erred in failing to declare, *sua sponte*, a mistrial when the prosecutor commented in his closing argument on appellant's postarrest silence and the prosecutor's personal belief appellant was guilty.

We affirm.

### Facts

Appellant does not contest the sufficiency of the evidence to convict him. The evidence, viewed in the light most favorable to the verdict, is as follows.

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

On June 22, 1995, appellant was a passenger in a vehicle driven by James Evans. He had requested a ride "up north" in Platte County from Mr. Evans. When he got into the car, he had a black doctor's bag.

When Deputy Sheriff David Kissee of the Platte County Sheriff's Office first observed the vehicle, it was being driven erratically and was headed north on I–29 at 56th Street. He pulled to the shoulder and let it pass. He ran the license plate and found that the plate belonged to a different vehicle than the one on which it was displayed and belonged to an individual with three outstanding warrants from the Kansas City, Kansas, Police Department.

When Deputy Kissee began to follow the vehicle, it began accelerating. Deputy Kissee gave chase after activating his emergency lights, with speeds reaching 80 miles an hour. During the chase, Deputy Kissee observed items, which appeared to him to be small plastic vials or plastic baggies, being thrown from the passenger window by the passenger. He also observed an object which looked like a brown eyeglass case being thrown out the passenger window by the passenger and what appeared to be a weapon being thrown out the passenger window by the driver.

The vehicle eventually exited I–29 on 72nd Street, eastbound. After going through a parking lot, the vehicle went north on Overland, then west on 72nd, finally driving through some backyards before crashing into a tree. The occupants of the vehicle were ordered by the deputy to exit the vehicle. The driver, Evans, immediately complied by opening the door and heading straight to the ground. The appellant hesitated in that his door was trapped against some brush. He finally exited through the window. He was ordered by the deputy to come to the front of the vehicle and lie down by Evans. Instead, he went to the rear of the vehicle and laid down. The deputy again ordered him to go to the front, which he eventually did. Both men were then taken into custody.

When asked by the deputy who they were, both men gave false names. At the rear of the vehicle where the appellant had laid down, the deputy found a small silver compact containing a white powdery substance, later stipulated to at trial as being methamphetamine. Inside the vehicle, the deputy found the black doctor's bag, which contained syringes, miniaturized scales, and a pill crusher, commonly used to break down methamphetamine tablets in the process of making methamphetamine. Also found inside the vehicle were three pagers and a green plastic box with a hunting knife on top and containing small plastic baggies with a red apple logo. By the open driver's door, the deputy found a scraper commonly used to crush and separate the powder form of the drug. A search of the area where the deputy observed objects being thrown out the window led to the recovery of a red case and baggies, one with an apple logo. Several of the baggies appeared to contain a white, powdery substance, which was stipulated to at trial as being methamphetamine. When questioned, appellant acknowledged that items were thrown from the vehicle as the deputy observed, but that he had not thrown them.

Evans testified that when the deputy activated his lights, he was going to pull over, but the appellant started screaming for him to "go, go, go" and was swinging a holster that had an old gun in it. It was a .38 which Evans had sold to the appellant. He further testified that the appellant was throwing plastic bags from the black doctor's bag out the window while the deputy was in pursuit.

As a result of this incident, Evans was charged and convicted on two counts of unlawful use of a weapon for carrying brass knuckles and a knife. In addition, he was charged and mistrialed on a charge of possession of methamphetamine with intent to distribute, deliver or sell, a charge to which he later pleaded guilty and received a suspended execution of sentence. He was subpoenaed from prison and testified against the appellant at trial. He did not testify as part of any plea agreement with the State.

Appellant was charged as a prior and persistent offender and prior drug offender with the class A felony of possession of a controlled substance with intent to distribute, deliver or sell, § 195.211, and the class D

felony of unlawful use of a weapon, which was dismissed during trial. He was convicted by jury of the possession charge and was sentenced to twenty years imprisonment.

This appeal follows.

## Standard of Review

■ Appellant concedes that he did not preserve for appellate review the issues raised in either of his Points Relied On and asks for plain error review under Rule 30.20. " 'The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review.' *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983), *citing State v. Davis,* 566 S.W.2d 437, 447 (Mo. banc 1978)." *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990); *see State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995), *citing McMillin.* Unless a claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' " we will decline to review for plain error. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied,* ─── U.S. ───, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). As such, plain error review is discretionary with the appellate court. *State v. Wyman,* 945 S.W.2d 74, 77 (Mo.App.1997); *State v. Frazier,* 927 S.W.2d 378, 379 (Mo. App.1996).

Plain error relief is appropriate only when the alleged error so substantially affects the rights of the defendant that a manifest injustice or miscarriage of justice results. Rule 29.12(b). The defendant bears the burden of showing that an alleged error has produced such a manifest injustice. *State v. Parkus,* 753 S.W.2d 881, 888 (Mo. banc), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). Mere allegations of error and prejudice will not suffice. *See State v. Kilgore,* 771 S.W.2d 57, 67 (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993). "The determination whether plain error exists must be based on a consideration of the facts and circumstances of each case." *State v. Cline,* 808 S.W.2d 822, 824 (Mo. banc

1991), *citing State v. Sanders,* 541 S.W.2d 530, 533 (Mo. banc 1976). " 'When guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from the refusal to invoke the rule.' " *State v. Jordan,* 627 S.W.2d 290, 293 (Mo. banc. 1982), *citing State v. Bainter,* 608 S.W.2d 429, 431 (Mo.App.1980), *citing State v. Hurtt,* 509 S.W.2d 14, 15[3] (Mo.1974).

■ " 'The declaration of a mistrial is a drastic remedy to be granted only with extreme caution and in extraordinary circumstances,' " *State v. Ramsey,* 864 S.W.2d 320, 331 (Mo. banc 1993), *citing State v. Feltrop,* 803 S.W.2d 1, 9 (Mo. banc 1991), " 'where the prejudice to the defendant cannot be removed any other way.' *State v. Jones,* 921 S.W.2d 28, 31–32 (Mo.App.1996). 'Because the trial court is in a better position to evaluate the prejudicial effect on the jury, its decision not to grant a mistrial is granted enormous discretion.' " *State v. Danback,* 886 S.W.2d 204, 209 (Mo.App.1994). *Wyman,* 945 S.W.2d at 77. As to closing argument, the decision of the trial court not to grant a mistrial is reversible as plain error only where manifest injustice occurs and the argument has a decisive effect on the jury's determination. *State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc 1993). "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *Silvey,* 894 S.W.2d at 670, *citing State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc 1988). Further, plain error relief should be rarely granted as to closing argument, " 'for trial strategy looms as an important consideration and such assertions are generally denied without explanation.' " *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994), *citing State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986); *see also, Wyman,* 945 S.W.2d at 77.

## I.

■ In his first point, the appellant claims that it was plain error for the trial court not to have declared, *sua sponte,* a mistrial when the prosecutor, in his direct

examination of co-defendant, James Evans, intentionally elicited testimony from him concerning the disposition of Evans' related charges, and again when he commented on this testimony in his closing argument. Specifically, the appellant complains of testimony and closing argument concerning the fact that: (1) Evans was tried on an identical charge of drug possession; (2) Evans' trial resulted in a mistrial due to a hung jury; (3) after the mistrial, Evans pled guilty and received a suspended execution of sentence as to the possession charge; and, (4) Evans was not required to testify against the appellant as part of any plea agreement with the State. Appellant contends that the State, by its actions, was asking the jury to prejudge his guilt, by pointing to Evans' admitted guilt, thereby denying him his due process right to a separate, fair trial by an impartial jury. Because we find this claim facially establishes a substantial ground for believing that manifest injustice or miscarriage of justice has resulted, we grant plain error review. *See Jordan,* 627 S.W.2d at 293 (holding that the right to a fair and impartial trial is a substantial right within the meaning of the plain error rule); *see also State v. Borden,* 605 S.W.2d 88, 90 (Mo. banc 1980) and *State v. Johnson,* 787 S.W.2d 872, 873–74 (Mo.App.1990) (holding as *Jordan, supra,* that plain error review was appropriate for the same claim appellant makes here).

▮▮▮▮▮ As a general rule, it is reversible error to allow the State in a co-defendant's case to introduce into evidence or disclose to the jury the disposition of another co-defendant's charged offense arising out of the same transaction as the defendant's, as was the case here. *State v. Lingar,* 726 S.W.2d 728, 735 (Mo. banc) *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); *State v. Jordan,* 627 S.W.2d 290, 293 (Mo. banc 1982); *State v. Johnson,* 456 S.W.2d 1, 4 (Mo.1970); *State v. Aubuchon,* 381 S.W.2d 807, 815–16 (Mo.1964); *State v. Reynolds,* 837 S.W.2d 542, 544–45 (Mo.App.1992); *State v. Akins,* 829 S.W.2d 619, 621 (Mo.App.1992). The basic rationale underlying the holdings that this is prejudicial error is that it is irrelevant and incompetent because it infers that since the confederate was guilty

the defendant must therefore be guilty (*State v. Castino, supra* [264 S.W.2d 372 (Mo.1954)]) and violates the defendant's right to be tried on his own. *State v. Johnson, supra; State v. Aubuchon, supra.*

*State v. McCarthy,* 567 S.W.2d 722, 724 (Mo. App.1978). However, the Missouri Supreme Court recognized an exception to this general rule in *State v. Borden, supra,* holding that although evidence of a co-defendant's related criminal disposition, including any plea agreement, could not be used as substantive evidence to prove his guilt or innocence, it could be used by the State to preemptively rehabilitate a *testifying co-defendant* who it anticipated would be subject to impeachment attempts by the defendant on the basis that the co-defendant's testimony against him was influenced by the disposition in the related case. *Borden,* 605 S.W.2d at 90–91; *see also, Lingar,* 726 S.W.2d at 734–35; *Reynolds,* 837 S.W.2d at 544–45; *Akins,* 829 S.W.2d at 621; *State v. Johnson,* 787 S.W.2d 872, 873–74. The rationale given for the exception was that the State, just as a defendant, had a right to explain the interest or bias of a witness, including the right to develop any interest or bias, or the lack thereof, on direct examination in anticipation of impeachment attempts of a testifying co-defendant by the defendant. However, such evidence cannot be used to impeach the *testifying defendant. Johnson,* 787 S.W.2d at 874–75, *citing McCarthy,* 567 S.W.2d at 724. Further, even though the evidence elicited concerning the related disposition is permissible under the exception, it still may be reversible error for the State to argue to the jury in closing argument that it can infer from such evidence the defendant is guilty in that his co-defendant had already been convicted or pled guilty. *State v. Yingst,* 651 S.W.2d 641, 643–44. The issue then for us to decide here is whether the State's actions in this case violated the parameters of the exception to the general rule that evidence or disclosure of the disposition of a co-defendant's related charges is reversible error.

▮▮▮▮ A careful review of the record indicates that neither the State nor appellant raised the issue of Evans' prior criminal dis-

positions on related charges during *voir dire* or their opening statements. The subject was broached by the State in its case-in-chief during its direct examination of Evans. A review of this questioning would indicate nothing other than it was done in anticipation of appellant's cross-examination impeaching Evans' testimony against appellant by trying to show that it was predicated on the receipt of a favorable disposition from the State on his related criminal charges, which proved to be prophetic. Appellant's trial counsel devoted considerable time on his cross-examination of Evans and in his closing argument on this precise issue. Thus, under the *Borden* exception to the general rule discussed, *supra*, we find the State was justified in its direct examination of Evans disclosing the disposition of his related criminal charges and that no plain error resulted therefrom.

In addition to contending that the trial court erred in failing to declare, *sua sponte*, a mistrial for the State's direct examination of Evans concerning the disposition of his related criminal charges, appellant also contends that the trial court erred in failing to declare, *sua sponte*, a mistrial for the State's closing argument referencing this matter. In doing so, he argues that the prosecutor's argument "magnified" the State's direct examination of Evans and encouraged the jury to find appellant guilty because Evans was guilty. In this respect, the following are pertinent portions of the prosecutor's closing argument:

First of all, on June 22nd, 1995, Mr. James Evans, a man that you heard from yesterday, a man that's already been convicted of these crimes, was with Mr. Boyd that day. They were in a car going northbound on I–29 in Platte County.

. . . . .

Now, I believe Mr. Evans was involved in this and we're going to get to Mr. Evans in a second, but I also believe Mr. Boyd was, as well. He was there that day. He was not an unwilling participant in this activity, and that does bring us to Mr. Evans.

He was Mr. Boyd's accomplice. Now, we brought him here from jail against his will. He'd already been convicted, okay.

He didn't want to testify, but he had to. He got up on the stand, and to be frankly honest with you, I as a State's attorney, don't trust everything he says. I'm not asking you to trust everything he says, either. Let's be realistic. He's a criminal. He's a bad guy, and he's out with Mr. Boyd.

. . . . .

He was with Boyd. He's together with Boyd that day. Ladies and Gentlemen, the fact is, snakes live with snakes and wolves live with wolves. You don't have a sheep living with a wolf. We have to use people like Mr. Evans from time to time in order to point the finger at their co-defendants, their accomplices. That's what Mr. Evans did here today, or yesterday.

Let me give you my mantra, so to speak, what I'd like for you to talk about when you go back to the jury room and that's responsibility, responsibility. It seems that Mr. Soper would require a confession, the drugs on the individual, police all around the car and large amounts of other physical evidence or he'd never find a person guilty of a crime such as this.

. . . . .

Mr. Evans paid the price for what he did that day. What about Mr. Boyd? Is he going to? Is he going to bear responsibility for his actions?

. . . . .

The fact is that Mr. Evans is such a bad man, why did Mr. Boyd hang around with him? Why was Mr. Boyd there? The fact they were working together. And while I urge you to look at Mr. Evans's testimony for what it is, a convicted felon, look at it in light of what happened that day . . . .

■ As stated, *supra*, even though evidence elicited concerning a related disposition is found to be permissible under the *Borden* exception, it is error for the State to argue to the jury in closing argument that it can infer from such evidence that the defendant is guilty in that his co-defendant had already been convicted or pled guilty. *Yingst*, 651 S.W.2d at 643–44. In reviewing the comments of the prosecutor here, it is

clear that, although he did make permissible arguments concerning credibility issues relating to the testimony of Evans, he also impermissibly invited the jury to convict the appellant due to his association with Evans, a convicted felon and "bad guy." The question is whether the trial court's failure to declare, *sua sponte*, a mistrial on this basis constituted plain error. Although we condemn the argument of the prosecutor as being outside the permissible bounds of closing argument, no plain error occurred here.

As stated, *supra*, as to claimed plain error in closing argument, the decision of the trial court not to grant a mistrial is reversible only where manifest injustice occurs and the argument has a decisive effect on the jury's determination. *Shurn*, 866 S.W.2d at 460. "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *Silvey*, 894 S.W.2d at 670, *citing State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988). Further, plain error relief should be rarely granted as to closing argument, 'for trial strategy looms as an important consideration and such assertions are generally denied without explanation.'" *Cobb*, 875 S.W.2d at 537, *citing State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986); *see also, Wyman*, 945 S.W.2d at 77. Moreover, as stated, *supra*, " '[w]hen guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from the refusal to invoke the rule.' " *Jordan*, 627 S.W.2d at 293, *citing State v. Bainter*, 608 S.W.2d 429, 431 (Mo.App.1980), *citing State v. Hurtt*, 509 S.W.2d 14, 15[3] (Mo.1974).

■ Here, we cannot say that the impermissible portion of the prosecutor's closing argument had a decisive effect on the jury's determination of appellant's guilt. Reasonably and logically, the eye-witness testimony of the arresting officer, coupled with that of Evans, other than that concerning his related criminal dispositions, was responsible for the appellant's conviction. The impermissible argument of the prosecutor was not decisive,

but inconsequential. As such, we hold that there was no resulting manifest injustice or miscarriage of justice establishing plain error sufficient to reverse his conviction.

Point denied.

## II.

In his second point, the appellant claims in two subpoints that the trial court plainly erred in not declaring, *sua sponte*, a mistrial for the closing argument comments by the prosecutor concerning appellant's postarrest silence and the prosecutor's personal belief that appellant was guilty. We will address them separately.

### A. Commenting on Appellant's Postarrest Silence

The appellant contends that it was plain error when the trial court failed to declare, *sua sponte*, a mistrial when the prosecutor argued to the jury that it could infer his guilt from the fact he failed to offer to Deputy Kissee at the time of the stop an exculpatory explanation for what had transpired. Appellant contends that this constituted an impermissible comment on his postarrest silence, which violated his Fifth Amendment right to remain silent. We disagree.

■ Appellant objects to the following comments made by the prosecutor in the rebuttal portion of his closing argument:

> Now, when I [Deputy Kissee] apprehended the person of Mr. Boyd, he didn't look like he was woozy. No, Mr. Boyd didn't run up to Dave Kissee and said [sic], thank God you finally stopped us. Thank God. This guy was running and he was chasing, he was running away from you. I tried to stop him. He didn't say that. He surrendered himself. He surrendered himself. He didn't act like a man who had just had a bump on his head.

A review of the record indicates that by these comments, the prosecutor was attempting to rebut the appellant's assertion throughout the trial, including his closing argument, that he was not guilty as charged, but was simply an innocent bystander to the high-speed chase and crimes charged and a captive of the real wrongdoer, Evans. The

prosecutor was asking the jury to consider as evidence of appellant's guilt the fact that he did not offer such an explanation when he and Evans were first stopped. As such, the State argues that the comments in question were fair comment to the jury on appellant's failure to offer an exculpatory explanation at the time of Evans' and his stop.

The law is well established that the State is not allowed to use a defendant's silence, at the time of arrest and *after* (emphasis added) receiving *Miranda* warnings, for impeachment purposes. *State v. Anthony,* 857 S.W.2d 861, 868 (Mo.App. 1993). The prosecution may not use the defendant's post-arrest silence as either affirmative proof of guilt, nor to impeach testimony. *State v. Noel,* 871 S.W.2d 628, 629 (Mo.App.1994) (citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). The State may not show that an accused failed to volunteer an exculpatory statement, nor may it show that the accused failed to deny or explain, while under arrest, an incriminating fact about which no question was asked. *State v. Howell,* 838 S.W.2d 158, 161 (Mo.App.1992) (citing *State v. Stuart,* 456 S.W.2d 19, 22 (Mo. banc 1970)). The admission of the accused's post-arrest silence constitutes an invasion of his constitutional rights. *Howell,* 838 S.W.2d at 161.

*State v. White,* 941 S.W.2d 575, 580 (Mo.App. 1997). However,

it is permissible for the State to use a criminal defendant's immediate post-arrest, **pre-***Miranda* warning silence for purposes of impeaching his testimony when a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and defendant's silence is probative of inconsistencies in that testimony.

*State v. Antwine,* 743 S.W.2d 51, 69 (Mo. banc 1987) (emphasis added).

 Here, the appellant did not testify, so impeachment of his testimony was not a purpose of the prosecutor's comments. However, the purpose of the comments was clearly to impeach or contradict appellant's defense that he was an innocent bystander and did not commit any crimes. We fail to see how under plain error review the prohibi-

tion exception stated in *Antwine* would not apply to the rebutting of a defense.

Obviously, the appellant's silence referenced by the prosecutor in his closing argument was at a time immediately after the stop and prior to any required *Miranda* warning. Further, based on appellant's asserted defense at trial, one would have expected an exculpatory statement from him at that time, as the prosecutor argued, which did not occur. As such, it was reasonable for the State to point this fact out to the jury and urge it to reject the appellant's defense on this basis. Thus, based on the rationale stated in *Antwine,* we hold that the comments of the State in its closing argument concerning appellant's failure to give a post-arrest, pre-*Miranda* exculpatory statement did not violate his Fifth Amendment right to remain silent, and as such, did not result in manifest injustice or a miscarriage of justice.

### B. Prosecutor's Personalizing Closing Argument

Appellant claims that the trial court plainly erred in not declaring, *sua sponte,* a mistrial when the prosecutor personalized his closing argument by telling the jury he believed appellant was guilty. Appellant objects to the following comment:

Now, I believe Mr. Evans was involved in this and we're going to get to Mr. Evans in a second, but I also believe Mr. Boyd was, as well. He was there that day. He was not an unwilling participant in this activity, and that does bring us to Mr. Evans.

 "A prosecutor may make statements that draw legitimate inferences from the evidence but may not make statements that imply a knowledge of facts not before the jury." *State v. Whitfield,* 837 S.W.2d 503, 511 (Mo. banc 1992). A prosecutor may state an opinion fairly drawn from the evidence before the jury. *State v. Mease,* 842 S.W.2d 98, 109 (Mo. banc 1992). Here, the prosecutor, in stating his opinion that he believed the appellant was involved in the crimes charged, did not imply that he had knowledge of facts not before the jury. His belief, as stated, was based on the evidence presented. Moreover, he did not ask the

jury to convict based on his belief, but asked them to consider the evidence in the record. As such, his comments were permissible and did not result in manifest injustice or a miscarriage of justice.

Point denied.

## Conclusion

The judgment of conviction and sentence is affirmed.

All concur.