**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Rayon DANSBERRY,
Defendant/Appellant.**

**No. ED 75541.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 23, 2000.

---

David C. Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT G. DOWD, Jr., Judge.

Defendant, Rayon Dansberry, appeals from the judgment upon his convictions of three counts of robbery in the first degree, Section 569.020, RSMo 1994; and three counts of armed criminal action, Section 571.015, RSMo 1994, following a jury trial. Defendant was sentenced to three concurrent terms of seventeen years' imprisonment on the robbery convictions to be served consecutively with three concurrent terms of eight years' imprisonment on the armed criminal action convictions. The dispositive issue on appeal is Defendant's claim that the trial court plainly erred in accepting the verdict because, during voir dire, the prosecutor informed the panel three times that Defendant's co-defendant had admitted his guilt and had been or would be sentenced. We hold and the

state concedes that this was prejudicial error. We reverse and remand for a new trial.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed the following. In the late evening of June 14, 1997, and in the early morning of June 15, 1997, Debbie McMurray, Penny Powell, and Caroline Kamberger were at Laclede's Landing. The three women decided to leave and headed toward their car. When they arrived at the parking lot, Ms. Powell saw Defendant walking toward them. Defendant said, "hey." Ms. Powell responded with "hello." Defendant then held a gun to Ms. McMurray's head and ordered the women against a wall. Thereafter, another man, Robert Barton, arrived and held a gun on Ms. Powell and Ms. Kamberger. Defendant and Barton ordered the women to put their purses on the ground, to hand over their jewelry, to get down on the ground, and put their faces "in the ground" or they would shoot. Defendant and Barton took the purses and jewelry and told the women not to move. Defendant and Barton ran off. The three women waited one or two minutes and then left to find the police.

On August 6, 1997, following a high-speed chase, Defendant was arrested. When police apprehended Defendant, they found a .380 gun under a car Defendant had stopped by while fleeing from police. That gun was identified as looking like the gun Barton used during the robberies in June.

At trial, Detective John Anderson testified that Ms. Powell picked Defendant out of a lineup. He also testified that Ms. McMurray picked Defendant out of a lineup, but stated she was not one hundred percent certain. Detective Anderson further testified that Ms. Kamberger did not pick anyone out of the lineup.

Defendant presented an alibi defense at trial. Following all of the evidence, instructions, argument, and deliberations, the jury returned verdicts of guilty. The trial court overruled Defendant's motion for new trial. Defendant was sentenced to the custody of the Missouri Department of Corrections. This appeal follows.

The only allegation of error to be considered herein arises from certain statements made to the venire panel during voir dire. The trial court called two panels for voir dire. During the state's examination of the first panel, the prosecutor posed the following questions:

[Prosecutor]: You're also going to hear about another individual, this individual was involved in the robbery. His name is Robert Barton. Okay. And he lived, or lives in the 500 block of West Ebert in St. Louis. Does anybody recognize the name Robert Barton? . . . .

* * *

[Prosecutor]: . . . The last area I want to talk to you a little bit about is regarding Mr. Barton, Robert Barton. I expect him to testify and to admit his involvement in this incident. Okay. You will hear, I expect, what his sentence was. Or is going to be. And that there was no deal.

[Defense counsel]: Judge may we approach?

THE COURT: You may.

(Counsel approached the bench and the following proceedings were had:)

[Defense counsel]: Judge, I mean, the State's getting into what's going to be actually attested facts in the case, so I would object and ask the jury to disregard even this portion of what he's saying without letting him finish the question.

[Prosecutor]: Judge, the only additional question I'm going to ask is simply of he's admitted his guilt, he knows what his punishment is, are you going to automatically disbelieve anything he says.

THE COURT: Well, I'm going to sustain the objection, but you can ask the jury as a general proposition is there anybody here who would automatically disbelieve a witness because they pled

guilty to a crime, but I'm sustaining your objection.

[Defense counsel]: And ask them to disregard.

[Prosecutor]: By sustaining the objection and making a comment, it appears as though you're inferring there was a deal. There's the inference there.

THE COURT: Implied.

[Prosecutor]: I should say, but there was a deal.

THE COURT: No, I don't think it's implying anything, one way or another. It could mean any number of things.

(The proceedings returned to open court.)

THE COURT: The objection is sustained. Ladies and gentlemen, please disregard the last question.

[Prosecutor]: Okay. Let me ask it to you this way. If someone comes in here and admits their involvement in the incident, okay, is there anyone in here going to automatically disbelieve that person? Comes in here and accepts responsibility on what he did and tells you what happened, is there anyone here going to automatically disbelieve them? Okay. I see no hands. Is anybody going to automatically believe them? Okay.

Can everyone in here judge his credibility just like any other witness? Okay. The same as any other witness that comes in here and testifies? Can everyone in here assure me that they will treat them just like any other witness? Okay.

* * *

[Prosecutor]: I expect that Mr.—low and behold, it's not a shocking thing, he's going to say there was some alcohol involved. Okay. Is anybody going to automatically disbelieve him just because he was drinking alcohol that night? Okay.

I expect that the witness is going to come in here and say I was smoking some marijuana that night. Is anybody going to automatically disbelieve him just because he says I was smoking marijuana that night? Okay.

So you're going to give him a fair shake just as you would any other witness and listen to their overall testimony and judge his credibility just like you would any other witness? Can everyone assure me of that? Okay.

I expect he's going to also tell you that he has a prior conviction. Okay. For tampering. Which is driving in a stolen car. Is anybody going to automatically disbelieve him just because he has a prior conviction? If you do, raise your hand. Okay. I see one hand. It is Ms. Vaughn?

VENIREPERSON VAUGHN: Um-hmm

[Prosecutor]: You're thinking that if a witness has a prior conviction there's just no way you can believe anything they say?

* * *

VENIREPERSON VAUGHN: I'm saying just because he has a prior conviction there's no way I can believe what he says?

[Prosecutor]: Right.

VENIREPERSON VAUGHN: Yeah.

[Prosecutor]: Okay. So because of the fact he has a prior conviction, you're not going to be able to ever believe him?

VENIREPERSON VAUGHN: No, not because he has a prior conviction, if he was involved in what's going on now, no, I wouldn't believe him.

[Prosecutor]: Okay. So it's not based upon a—the prior conviction?

VENIREPERSON VAUGHN: No.

[Prosecutor]: It's based upon—

VENIREPERSON VAUGHN: He was involved in what was going on, and now he's become a witness, of course I would feel he would say whatever he needs to say.

[Prosecutor]: He wouldn't be the one we would like at—he would tell you

what you want to hear. Let me just back up here. He's admitted his involvement, he knows what his sentence is going to be. You're thinking there's under no situation that you could ever believe a word that comes out of his mouth, even though he hasn't come in here and said one thing, you're saying there's no way you can believe anything he says?

VENIREPERSON VAUGHN: I wouldn't believe everything he said, no.

During voir dire examination of the second panel, the following took place:

[Prosecutor]: The last area I want to talk to you about is, I expect you may hear from Robert Barton. Robert Barton has admitted—

[Defense counsel]: Objection, your Honor, may we approach?

THE COURT: You may.

(Counsel approached the bench and the following proceedings were had:)

[Defense counsel]: Judge, at this time I believe that the prosecutor basically just testified for Robert Barton, I would ask for a mistrial. This jury has been contaminated by this information. Barring that as a lesser remedy, I would ask that the prosecutor be ordered to not ask the question and the jury be admonished not to take that into account.

[Prosecutor]: Judge, I told them that I expect him to testify and he admitted his involvement in the crime.

THE COURT: Well, he has, but you know, there's all kinds of things we know that are not in evidence. I'm going to overrule the request for a mistrial. I will sustain the objection, and I will admonish the jury to ignore the question. I take it you want to—you're looking for assurances from the jury they would not refuse to consider evidence of a person who committed participation in the crime.

[Prosecutor]: As well the alcohol use.

THE COURT: Well, you can—you can ask them, you know, what you refuse to consider the evidence of a juror that absolutely categorically refuse to consider the evidence of a person who participated in the crime, you absolutely categorically for every circumstance refuse to consider the evidence of a witness, consumed alcohol before the events. You can ask those kinds of questions, but you can't tell them Robert Barton's going to testify.

[Prosecutor]: But I can certainly say he will testify as to what happened?

THE COURT: There's really no point in it. All we want to do here is find out if the jury is going to follow the law. They don't need to know what Robert Barton is going to testify to, they don't know there's such a person as Robert Barton.

(The proceedings returned to open court.)

THE COURT: Ladies and gentlemen, please disregard the last question. [Prosecutor], you may continue.

■ We review Defendant's claim for plain error. As to the prosecutor's first comment on the disposition of co-defendant's case, Defendant's objection was sustained and the panel was admonished as requested. Therefore, no error is preserved for appellate review. *State v. Brasher*, 867 S.W.2d 565, 569 (Mo.App. W.D.1993). As to the prosecutor's second reference to co-defendant Robert Barton's admission of involvement and sentence, Defendant failed to object and therefore, did not preserve the claim for appellate review.[1] However, because we find and the state concedes that this claim facially establishes a substantial ground for believing that manifest injustice or miscarriage of justice has resulted, we grant plain error review. *State v. Boyd*, 954 S.W.2d 602, 607 (Mo.App. W.D.1997). Improper references to the disposition of a co-defendant's case have been found to rise to the level of

---

1. As to the prosecutor's third comment, we note this was a new venire panel, and the prosecutor never revealed the disposition of

the co-defendant's case. Moreover, the trial court sustained the objection and admonished the jury to disregard the statement.

plain error. *State v. White*, 952 S.W.2d 802, 805 (Mo.App. E.D.1997); *State v. Jordan*, 627 S.W.2d 290, 293–94 (Mo. banc 1982).

 As a general rule, it is reversible error to allow the state to admit evidence or even disclose to the jury that a co-defendant has been convicted or pled guilty to the charges. *State v. Lingar*, 726 S.W.2d 728, 735 (Mo. banc 1987). However, the Missouri Supreme Court has recognized an exception to this general rule in *State v. Borden*, 605 S.W.2d 88 (Mo. banc 1980), holding that, although evidence of a co-defendants' related criminal disposition could not be used as substantive evidence to prove his guilt or innocence, it could be used by the state to preemptively rehabilitate a testifying co-defendant who it anticipated would be subject to impeachment attempts by the defendant on the basis that the co-defendants' testimony against him was influenced by the disposition in the related case. *Borden*, 605 S.W.2d at 90–91. This exception has limitations. *See Jordan*, 627 S.W.2d at 294.

 In *Jordan*, a prosecutor, apparently believing in good faith that two co-defendants would testify, revealed the disposition of the co-defendants' related case during voir dire. *Id.* at 292. However, the two co-defendants did not testify at the trial claiming the Fifth Amendment. *Id.* Whether or not the defendant's objections, as made, preserved the points for review was questionable, so the *Jordan* court invoked plain error review finding that the evidence of the defendant's guilt was not overwhelming. *Id.* at 292–293. The *Jordan* court explained that the exception to the general rule does not apply in situations where the co-defendant does not take the stand as a witness for the state and give the defense an opportunity to explore through cross-examination the circumstances leading to the conviction or plea-bargain agreement. *Id.* at 294.

 The present case is factually similar. Here, the prosecutor, acting in good faith, anticipated the testimony of co-defendant Robert Barton. As in *Jordan*, during voir dire, the prosecutor commented on the disposition of the co-defendant's case and later that co-defendant did not testify claiming his Fifth Amendment right. As in *Jordan*, co-defendant Robert Barton did not take the stand as a witness for the State and give the defense an opportunity to cross-examine Robert Barton. Although the issue was not preserved for review, the evidence against Defendant was not so overwhelming to overcome the prejudice to Defendant's right to a fair and impartial jury. The State concedes that the evidence against Defendant was not overwhelming. Only one of the victims positively identified Defendant. One of the victims identified Defendant but could not be sure. One of the victims could not identify him. Moreover, Defendant presented an alibi defense at trial.

Given that the present case and *Jordan* are indistinguishable, we reverse Defendant's conviction and remand this cause for a new trial. Because the judgment must be reversed and remanded, we do not consider the other points of error, as they may not arise on retrial. Defendant's motion for remand is denied as moot.

The judgment is reversed and the cause is remanded for a new trial.

CRANE, P.J., and SULLIVAN, J., concur.