STATE of Missouri, Respondent,

v.

Larshun WILKINS, Defendant–
Appellant.

No. ED 77711.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 6, 2001.

Dave Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

Defendant Larshun Wilkins appeals the judgment entered upon his conviction for robbery in the first degree. Among his claims of error, the defendant claims the trial court: (1) erred in denying a mistrial after the prosecutor stated during opening statement that the codefendant Ronnie Pope pleaded guilty to the robbery, and (2) plainly erred in convicting the defendant given that the prosecutor produced evidence of the codefendant's plea of guilty as substantive evidence of the defendant's guilt. Because we find the prosecutor injected evidence of the codefendant's plea of guilty as substantive evidence of defendant's guilt, we reverse the judgment of conviction and remand the cause for a new trial.[1]

*Facts*

The defendant was charged and tried for acting with the codefendant to rob the victim, Darryl Kelly, in June 1998. The victim was accosted from behind by two men, who put a gun to the victim's head and took his keys, a wrist bracelet, and a neck chain with a Mickey Mouse medallion. The victim immediately reported the robbery to police, and described one man as wearing a white St. Louis Cardinals jersey and blue jeans and another man wearing a red warm-up suit and red and white tennis shoes. Descriptions of the robbers were broadcast, and the defendant and the codefendant were quickly detained. However, because they did not in all respects match the broadcast descriptions, both individuals were released. The officers did notice that the defendant was wearing a neck chain with a Mickey Mouse medallion, but did not know that such a

medallion had been stolen from the victim. Later, upon learning that such a medallion had been stolen, the defendant and the codefendant were arrested. The police, having advised the victim that they caught the robbers, conducted a show-up in which the victim positively identified both the defendant and the codefendant as the robbers.

The codefendant pleaded guilty to robbery in March 1999. Initially, the codefendant refused to admit the facts of the robbery but, upon hearing a recitation of the facts, including that the defendant was an accomplice in the robbery, the codefendant assented and pleaded guilty. However, the next day, the codefendant stated during his deposition that neither he nor the defendant had anything to do with the robbery. The prosecutor had no plea agreement for leniency with the codefendant. The prosecutor then assigned to the defendant's case deleted the State's endorsement of the codefendant.

The month following the codefendant's guilty plea, the defendant stood trial. At trial, the victim testified that he was unsure if either of his robbers were in the courtroom, did not know who ordered him to give up his property, and did not know who had the gun. The trial ended in a hung jury.

At his retrial the following year, a different prosecutor appeared on behalf of the State. Just before trial, the prosecutor indicated his intent to use the codefendant as a witness, despite the deposition testimony given by the codefendant and the fact that the previous prosecutor had deleted the witness's endorsement. Then, during opening statement, the prosecutor summarized the evidence he planned to

---

1. As to defendant's remaining points of alleged error, the State may consider the objections made and govern itself accordingly. *See*

*State v. Aubuchon,* 381 S.W.2d 807, 816 (Mo. 1964).

present throughout the trial by telling the jury, "Ronnie Pope [the codefendant] in March of last year, March of 1999, and you will hear from him, comes into open court, before a judge, like this one and pleads guilty to the crime of robbery." The trial judge sustained the defense counsel's objection to the prosecutor's reference to the codefendant's conviction despite the prosecutor's assertion that he would call the codefendant to testify to the conviction. The court denied a mistrial, and decided not to admonish the jury to disregard the reference for fear of highlighting the matter.

After the victim on retrial identified the defendant as one of the robbers, the State then called the codefendant, who was writted in from the penitentiary to take the stand. The codefendant initially refused to testify, asserting his constitutional right against self-incrimination. The court, citing *State v. Benson,* 633 S.W.2d 200 (Mo. App. E.D.1982), disallowed the refusal because it was premised on the codefendant's concern that he might perjure himself. The prosecutor then questioned the codefendant about the circumstances of the robbery. The codefendant denied any involvement and largely resisted the prosecutor's inquiries. The examination proceeded haltingly. When the court asked the purpose of his line of questioning, the prosecutor responded, "We're talking to the fact that he plead guilty since he doesn't want to answer anything else." The prosecutor, apparently in reliance on Section 491.050 RSMo.,[2] asserted that he could ask the codefendant if he had been convicted of a crime. As the prosecutor then began to adduce evidence of the codefendant's plea of guilty, the defense attorney objected that it was improper impeachment. Now the prosecutor asserted he was not impeaching the witness, but

rather "asking about facts." The prosecutor then used the transcript of the codefendant's prior plea of guilty to examine him. This included the codefendant's initial denial of involvement in the robbery and then, after the prosecutor's factual rendition implicating both him and the defendant, his assent to those facts and his guilty plea.

Then, in closing argument, the prosecutor argued that the codefendant had been truthful at his plea of guilty when he implicated the defendant as his accomplice, as opposed to his trial testimony where he "dummie(d) up." More specifically, the prosecutor concluded his case by stating as follows:

> PROSECUTOR: Despite that corroboration if that's not enough, you've got the defendants, this friend, the one who he feels like is kin all of a sudden, coming into court on March 15[th] a year ago, saying, "Yes, Your Honor, I plead guilty to robbing Mr. Kelly—
>
> DEFENSE COUNSEL: Objection, he did not say this negative statement.
>
> THE COURT: Closing argument. Let's proceed.
>
> PROSECUTOR:—not only did I rob him, but I robbed him with my kin. My kin, my friend Larshun Wilkins, who had the gun. That's what he said on March 15[th] [the date of Pope's guilty plea]. That's what Ronnie Pope said on March 15[th]. Why is it that he comes in here and dummies up? You decide you be the judge of can you believe him that he doesn't remember. Just remember what happened—remember his answer, "I don't know what I did, I did plead guilty to Robbery in the Second Degree."
>
> Now if you believe that there's swamp land down in Florida that I have avail-

2. All further statutory references are to RSMo. (1994).

able for you. All right, ladies and gentlemen Ronnie Pope knew exactly what happened on June 7th of 1998. Ronnie Pope told the truth at the time of his plea of guilty.

After three hours of deliberation, the jury returned a verdict of guilty; a sentence of thirteen years was pronounced. Defendant appeals.

### Analysis

The defendant's claims of error on appeal both address the issue of whether the prosecutor injected evidence of the codefendant's plea of guilty as substantive evidence of the defendant's guilt. The defendant's first claim of error is properly preserved; however, the defendant's second claim of error is not preserved and is thus reviewable only for plain error. However, whether the defendant's claims of error are preserved or subject to plain-error review, Missouri courts have stated that the injection of a codefendant's plea of guilty as substantive evidence constitutes a manifest injustice and entitles a defendant to a new trial. *State v. Dansberry*, 18 S.W.3d 518, 523 (Mo.App. E.D. 2000); *State v. Jordan*, 627 S.W.2d 290, 293 (Mo. banc 1982); *State v. Fenton*, 499 S.W.2d 813, 816 (Mo.App. S.D.1973). Therefore, we review the defendant's claims of error together.

The essence of the issue on appeal is whether the codefendant's guilty plea was injected as impeachment of the codefendant's credibility, or as substantive evidence of the defendant's guilt. The State argues that the evidence regarding the codefendant's plea of guilty for the robbery with which the defendant was charged was merely impeachment of the codefendant by his prior plea of guilty pursuant to section 491.050. However, the record belies this assertion, and therefore the defendant's conviction cannot be upheld.

■ The general rule is that where two persons have been jointly indicted for the same offense and are separately tried, a conviction against one is not competent on the trial of the other because such conviction is not sufficient evidence either of joint action or the guilt of the accused. *State v. Fenton*, 499 S.W.2d at 816. The same principle applies in situations in which two persons are jointly charged and one pleads guilty. Moreover, the rule is equally applicable where two or more individuals are separately charged for the same crime. *Id.*, *citing* 22A C.J.S. Criminal Law 784 (1961). Therefore, it is deemed reversible error to present evidence or tell the jury that a jointly accused defendant has been convicted or pleaded guilty to the crime for which the accused is being tried. *State v. Johnson*, 456 S.W.2d 1, 4 (Mo.1970). The purpose of this rule is that a defendant is entitled to his own separate trial without having guilt predetermined by the guilty plea of another. *Aubuchon*, 381 S.W.2d at 816. In fact, an elementary principle of justice dictates that "one man shall not be affected by another's act or admission, to which he is a stranger." *Fenton*, 499 S.W.2d at 816.

The record demonstrates that the codefendant's plea of guilty was not used as impeachment of the codefendant, but rather as substantive evidence of the defendant's guilt.

■ First, the prosecutor betrayed his purpose in his opening statement. There he announced that the codefendant had "come[ ] into open court, before a judge, like this one and plead[ed] guilty to the crime of robbery." At this point, the prosecutor had set forth no testimony that the codefendant would give regarding the crime or the facts surrounding the victim's robbery; instead, he announced that the codefendant pleaded guilty to the rob-

bery. An opening statement is used to summarize the evidence a party expects to adduce. It would be unusual for the proponent of evidence to announce the impeachment of his evidence without having outlined a single item of evidence. Further, all the evidence the prosecutor later outlined in his opening statement was favorable to the State, thus obviating the need for impeachment. Lastly, of course, the plea of guilty was not characterized as impeaching evidence, but rather as substantive evidence. None of these circumstances lend credence to the State's assertion that this was merely impeachment evidence.

Second, the prosecutor tried to open his own door to the claimed impeaching evidence. He called the codefendant to the stand knowing that the codefendant denied all involvement in the robbery in his deposition testimony given immediately after his plea of guilty. In fact, the prosecutor in the first trial had deleted the State's endorsement of the codefendant. Now, on retrial, what was the prosecutor's reasonable expectation that the codefendant would provide relevant evidence of the defendant's guilt? The State on appeal does point to relevant evidence that was finally adduced, such as the codefendant's testimony regarding the clothes and tennis shoes he was wearing on the night of the robbery and that he was "some kin" to the defendant. However, this is an after-the-fact justification. When the trial court questioned the prosecutor's line of questioning at trial, the prosecutor explicitly stated he was questioning the codefendant regarding the facts he pleaded guilty to "since he doesn't want to testify to anything else." Thus, the prosecutor himself seemed to undercut the State's argument on appeal that he was adducing other relevant evidence. Finally, the prosecutor himself denied he was impeaching the codefendant, when he averred to the trial court that he was instead "asking about facts."

Third, the effect of impeaching the codefendant undercuts the State's claimed justification. When impeaching a witness with his prior plea of guilty, the witness's credibility is suspect as to all evidence given. The State argues that the prosecutor did indeed adduce relevant evidence from the codefendant, but then realized it needed to impeach the codefendant's denial of involvement in the robbery. But the alleged impeachment the State seeks to uphold went just as much to impeach the incriminating evidence given by the codefendant, as it did to impeach his denial of the robbery. Why would the State seek to call this recalcitrant witness, finally wrest some incriminating evidence out of him and then, upon hearing the witness's obviously anticipated denial of the robbery, seek its own witness's impeachment? The State is correct in its assertion that it may impeach its own witness; what is sorely lacking in this case is any plausible reason why it would do so.

Fourth, the scope of the claimed impeachment exceeds its necessary bounds. If the State sought to do no more than impeach its own witness by his prior plea, the State need only have adduced evidence that the codefendant had pleaded guilty to a robbery—not the robbery that was at issue in this trial. Again, the impeachment afforded by section 491.050 is founded on the reasonable principle that an adjudicated criminal is less worthy of belief. But the prosecutor here showed not only that the codefendant was a robber, but also the convicted robber in the charge at issue. Indeed, he went even further—and adduced evidence that in the codefendant's plea of guilty he named the defendant on trial as his accomplice!

Finally, the prosecutor concludes his case by stating during closing argument that the codefendant had pleaded guilty to robbing the victim along with the defendant and then "he comes in here and dummies up[.] . . ." The prosecutor then explicitly argued the truth of the codefendant's plea of guilty that directly implicated the defendant on trial: "Ronnie Pope told the truth at the time of his plea of guilty."

Clearly, the prosecutor injected the codefendant's plea of guilty as substantive evidence of defendant's guilt. Under these circumstances, the court abused its discretion and committed plain error in failing to take corrective action. We should candidly realize that jurors may have difficulty enough in properly limiting impeachment evidence to its intended purpose.[3] Here, the prosecutor, wittingly or not, exacerbated that difficulty. In doing so, he risked the defendant would be convicted by another's admission to which he was a stranger. To sanction the prosecutor's conduct here under the claimed rubric of impeachment would emasculate the rule against use of a codefendant's plea of guilty as substantive evidence.

█ We also reject the State's claim on appeal that this was merely harmless error as there was overwhelming evidence of the defendant's guilt. Although the State relies on a recent Southern District decision where the court held that the admission of evidence as to an accomplice's guilty plea did not result in manifest injustice where there was overwhelming evidence of guilt, we are not presented with such a situation. *See State v. Burgess*, 28 S.W.3d 441, 444–445 (Mo.App. S.D.2000). To the contrary, the defendant's first trial resulted in a hung jury, forcing the State to retry him. At retrial, the victim testified that he only glanced at the robbers from 30 feet away, at which time he paid no particular attention to them, and that his back was to the robbers throughout the robbery. Further, the victim's description of the robbers did not match that of the defendant, as the defendant was wearing a different sports jersey than described by the victim. Moreover, there was confusion regarding who was seen wearing the victim's Mickey Mouse medallion and when. Finally, the victim's identification of the robbers came after the police informed the victim that he was going to view the men who robbed them. From such evidence, we cannot conclude that there was overwhelming evidence of the defendant's guilt. We find the injection of the codefendant's plea of guilty to be prejudicial and manifestly unjust.[4]

Lastly, we note that we are not preventing the State from calling the codefendant to the stand in order to elicit relevant evidence. The State is also free to impeach such a codefendant under appropriate circumstances. However, what we do foreclose is the use of a codefendant's guilty plea as substantive evidence under the guise of impeachment pursuant to sec-

---

3. MAI–CR3d 310.14 governing impeachment of a witness other than defendant was not requested by the State or the defendant and was not given.

4. We do not address the effect of section 491.074 allowing the substantive use of evidence adduced to impeach a witness by a prior inconsistent statement since the statute, as it existed at the time of trial, had no application to offenses under Chapter 569, such as here. The State urges that, since the statute has since been broadened, we should find no plain error because the evidence would be admissible on retrial as impeachment by a prior, inconsistent statement. *See State v. Brown*, 912 S.W.2d 643 (Mo.App. W.D.1995). However, no foundation for such admission was laid at trial, nor can we predict what would occur upon retrial. Further, the State's theory does not address the defendant's claim of preserved error.

tion 491.050. When the State's right to impeach runs afoul of the defendant's right to a fair trial, the defendant's rights can be safeguarded by careful questioning that avoids characterization of the prior adjudication as substantive evidence. Accordingly, the judgment is reversed and the cause remanded.

PAUL J. SIMON and ROBERT G. DOWD, JR., JJ., concur.